622 A.2d 367

## IRON WORKER'S SAVINGS AND LOAN ASSOCIATION

v.

**IWS, INC. and Eagleview Construction, Inc. and Royalwood Estates. (Three Cases)**

**Appeal of EAGLEVIEW CONSTRUCTION, INC. and Royalwood Estates. (Three Cases)**

Superior Court of Pennsylvania.

Argued Nov. 20, 1991.

Filed March 24, 1993.

256

260

Denis J. Lawler, Philadelphia, for appellants.

Bruce E. Rodger, Kennett Square, for appellee Iron Worker's Sav.

Mary D. France, Harrisburg, for participating party Com. Dept. of Banking.

Before CAVANAUGH, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge.

Herein, we address three appeals from related orders of the Court of Common Pleas of Chester County. The first order in question was entered on January 3, 1991, and denied appellants' petition to open a confessed judgment. The second order was entered on January 4, 1991, and denied appellants' motion to compel production of the joint report of examination performed on Iron Worker's Savings and Loan Association by the Pennsylvania Department of Banking and the Federal

Home Loan Bank, Office of Regulatory Functions. Finally, the third order in question was entered on January 4, 1991, and denied appellants' motion to compel production of documents and reconvene the deposition of John R. Larkin. Finding no error below, we affirm all three orders.

We will first address that appeal docketed at 283 Philadelphia 1991, wherein appellants Eagleview Construction, Inc. and the joint venture trading as Royalwood Estates (hereafter "Eagleview") contend: 1) The lower court erroneously employed an incorrect standard in analyzing the evidence presented in support of the amended petition to open the confessed judgment; 2) The lower court erred in applying the parol evidence rule to this case; and 3) The evidence was sufficient to raise a jury question on whether appellee (hereafter "Iron Worker's") breached its confidential relationship with Eagleview. We find no merit to Eagleview's contentions.

When the denial of a petition to open a confessed judgment is appealed, we will not disturb the lower court's denial unless it is shown that the court committed an error of law or a manifest abuse of discretion. *Fountain Hill Millwork Bldg. v. Belzel,* 402 Pa.Super. 553, 555–556, 587 A.2d 757, 759 (1991); *Suburban Mechanical Contractors, Inc. v. Leo,* 348 Pa.Super. 324, 325, 502 A.2d 230, 231 (1985), citing *Lambakis v. Exar,* 340 Pa.Super. 483, 488, 490 A.2d 882, 884 (1985). Traditionally, a confessed judgment will be opened in only a limited number of circumstances, and only when the person seeking to open acts promptly, alleges a meritorious defense and presents sufficient evidence of that defense to require submission of the issues to the jury. *Fountain,* 587 A.2d at 759; *Suburban,* 502 A.2d at 231, citing *First Seneca Bank v. Laurel Mt. Development Corp.,* 506 Pa. 439, 443, 485 A.2d 1086, 1088 (1984). In making such a determination, the court employs the same standard as that of the directed verdict— "viewing all the evidence in the light most favorable to the petitioner and accepting as true all evidence and proper inferences therefrom supporting the defense while rejecting adverse allegations of the party obtaining the judgment." *Suburban,* 502 A.2d at 232, quoting *Germantown Manufactur-*

*ing Co. v. Rawlinson, Jr.,* 341 Pa.Super. 42, 46–47, 491 A.2d 138, 140–141 (1985).

 Rule 2959(e) of the Pennsylvania Rules of Civil Procedure provides that "in a proceeding to open a confessed judgment, if evidence is produced which, in a jury trial, would require the issues to be submitted to the jury, the court shall open the judgment." *Fountain,* 587 A.2d at 759. Pa.R.C.P. 2959(e) has been interpreted to require the judgment debtor to offer clear, direct, precise and "believable" evidence of its meritorious defense. *Suburban,* 502 A.2d at 232; *First Pennsylvania Bank, N.A. v. Lehr,* 293 Pa.Super. 189, 201–202, 438 A.2d 600, 607 (1981).[1]

Viewing the evidence in a light most favorable to Eagleview, the lower court set forth the facts as follows:

In September or October of 1987, John R. Larkin approached Dennis Meinhart, the principal of Eagleview, regarding a formation of a joint venture between IWS, Inc. (IWS) and Meinhart (Eagleview). IWS is a wholly owned subsidiary of Iron Worker's [Savings and Loan Association]. Various meetings were held regarding this possible joint venture, and Meinhart found a suitable tract of land, later known as Royalwood Estates.

In December of 1987, Larkin, who had previously represented Meinhart [as legal counsel], told Meinhart he could no longer represent him, as he had a conflict of interest; namely, Larkin was a member of the Iron Worker's Board. Larkin referred Meinhart to the law firm of Petrikin, Wellman, Damico, Carney & Brown, a firm with which Meinhart had previously dealt. Steven Brown, Esquire, undertook representation of Meinhart (Eagleview) and another member of the firm, Dennis Dunn, later represented Meinhart at the closing on March 31, 1988. On January 4, 1988, Mein-

---

1. Prior to the existence of Pa.R.C.P. 2959(e), the judgment debtor was required to offer clear, direct, precise and convincing evidence, and the trial court was to weigh the sufficiency of the evidence in that light. However, the requirement of "convincing evidence" has been liberalized to now require only "believable" evidence, thus, eliminating the need to "weigh the sufficiency of the evidence." *Suburban,* 502 A.2d at 232, citing *First Pennsylvania,* 438 A.2d at 606–607.

hart signed an Agreement of Sale for the tract of land for $1,500,000.00.

Additional meetings were held before the March 31, 1988 closing date and several terms were discussed with regard to the loan agreement. One of the terms discussed was the length of the loan. Various notes indicate a period of eighteen (18) months to two (2) years. On March 29, 1988, two days before settlement, Meinhart was informed that the loan period would be eighteen (18) months. Meinhart objected to this shorter time period and was obstensibly told by John Whitig, Iron Worker's President, not to worry, that the loan period would be extended.

Notwithstanding the fact that the loan documents clearly stated a loan period of eighteen (18) months, Meinhart signed the documents. It must be mentioned here that Meinhart admitted he was a sophisticated businessman; that he was represented by Mr.Brown and his firm; that he had an opportunity to read the loan documents at closing, but chose not to; that the documents were clearly readable and understandable, and finally, that he knew the repayment period was eighteen (18) months.

Trial Court Opinion, pp. 2–3.

■ First, Eagleview complains that the lower court applied an incorrect standard of review. Specifically, Eagleview contends that "[b]y holding that Eagleview had to present evidence that was "believable", the Lower Court not only improperly increased Eagleview's burden, but it weighed the presented evidence in violation of Pa.R.C.P. 2959(e)." Eagleview's Brief, p. 21. Requiring the petitioner to present "believable" evidence of a meritorious defense does not violate Pa.R.C.P. 2959(e). Rather, doing so insures proper application of Pa.R.C.P. 2959(e), by mandating that the decision whether to open a judgment will be based on credible evidence which, in a jury trial, would preclude the entry of a directed verdict and which, if believed by a jury, would not be reversed by the entry of judgment *non obstante verdicto. See First Pennsylvania*, 438 A.2d at 607; *Ritchey v. Mars*, 227 Pa.Su-

per. 33, 324 A.2d 513 (1974) (judgment debtor does not have to prove his defense conclusively).

Having determined that the lower court applied the proper standard of review, we turn to Eagleview's allegation that the lower court should not have applied the parol evidence rule to this case. Eagleview contends the parol evidence rule is inapplicable presently because: 1) Ambiguities exist in the parties' "Agreement", i.e., while the mortgage note states the term of the loan is eighteen months, the joint venture agreement provides that financing shall be in the form of a two-year loan; 2) Iron Worker's induced Eagleview to execute the mortgage note by fraudulently misrepresenting that it would extend the term of the loan; 3) Iron Worker's promise to extend the term of the loan was a separate contract from the mortgage note; 4) The mortgage note was executed under duress, and 5) The parties agreed subsequent to executing the mortgage note to a new contract which extended the term of the loan.

In *Myers v. McHenry,* 398 Pa.Super. 100, 580 A.2d 860 (1990), we set forth the following definition of the parol evidence rule:

Where the alleged prior or contemporaneous oral representations or agreements concern a subject which is specifically dealt with in the written contract, and the written contract covers or purports to cover the entire agreement of the parties, the law is now clearly and well settled that in the absence of fraud, accident or mistake the alleged oral representations or agreements are merged in or superseded by the subsequent written contract, and parol evidence to vary, modify or supersede the written contract is inadmissible in evidence.

*Myers,* 580 A.2d at 863, quoting *LeDonne v. Kessler,* 256 Pa.Super. 280, 286–287, 389 A.2d 1123, 1126–1127 (1978), quoting *Bardwell v. The Willis Co.,* 375 Pa. 503, 506, 100 A.2d 102, 104 (1953).

In regard to the application of the parole evidence rule, we first address Eagleview's allegation that "Agreement" between the parties is ambiguous because the mortgage note states the

term of the loan is eighteen months, while the joint venture agreement provides that the loan term is two years. Eagleview and IWS, Inc. executed a joint venture agreement on March 31, 1988, wherein those parties agreed that financing for the joint venture would be obtained through loans from Iron Worker's Savings and Loan Association. The loans would have a repayment term of two years. However, on that same day, Eagleview and IWS, Inc., as mortgagors, executed, *inter alia,* a mortgage note, a mortgage and construction loan agreement, with Iron Worker's, as mortgagee, which specifically provided for the $3,500,000 loan to be repaid in eighteen months.

█ Eagleview admits that it knew at the time of signing the mortgage note that its terms specifically required the loan to be repaid in eighteen months. Since the mortgage note upon which judgment was confessed is *unambiguous* in regard to the loan term, we find that the lower court correctly ruled that parol evidence was inadmissible to vary the terms of the written contract. *Myers,* 580 A.2d at 863.[2]

█ Second, we must consider whether Iron Worker's fraudulently induced Eagleview to execute the mortgage note by misrepresenting that it would extend the term of the loan. Eagleview argues that representatives of Iron Worker's assured him that it would extend the term of the loan to two years and that the eighteen month term was necessary to comply with federal banking regulations. However, this court has held that "where the assertions put forth by one party are specifically contradicted by the written agreement, *Bardwell* applies and parol evidence is admissible only to prove fraud in the execution, not in the inducement, of the contract. *Abel v. Miller,* 293 Pa.Super. 6, 10, 437 A.2d 963, 965 (1982); *LeDonne v. Kessler,* 256 Pa.Super. 280, 294 & n. 10, 389 A.2d 1123, 1130 & n. 10 (1978)." *McGuire v. Schneider, Inc,* 368 Pa.Super. 344, 352–353, 534 A.2d 115, 119 (1987), *aff'd per*

---

2. In reaching that decision, we reject Eagleview's argument Iron Worker's must be bound by the clause in the joint venture agreement which provided for a two-year loan repayment period. The joint venture agreement was with IWS, Inc., not Iron Worker's.

*curiam,* 519 Pa. 439, 548 A.2d 1223 (1988). Instantly, Eagleview alleges fraud in the inducement, not execution.

Simply put, "[a] party cannot justifiably rely upon prior oral representations, yet sign a contract denying the existence of those representations. *LeDonne v. Kessler,* 256 Pa.Super. at 294 n. 10, 389 A.2d at 1130 n. 10." *McGuire,* 534 A.2d at 119. Eagleview executed the mortgage note with the knowledge that the note mandated a eighteen month repayment period. It cannot now allege that Iron Worker's assured Eagleview that the note did not mean what it said. "This is precisely the type of claim that the parol evidence rule was designed to bar." *McGuire,* 534 A.2d at 119. If Eagleview relied on the alleged representation of a two year loan term, then it should have protected itself by incorporating the two year loan term into the mortgage note. *Cf., McGuire,* 534 A.2d at 119–120; *Bardwell,* 100 A.2d at 105. Eagleview, having failed to include the two year loan term in the mortgage note between itself and Iron Worker's, is bound by its precise terms.

Eagleview also contends that the parties entered into a separate contract whereby Iron Worker's agreed to extend the term of the loan for one year if Eagleview agreed to the eighteen month loan term in the mortgage note. Eagleview submits that the language in its joint venture agreement with IWS, Inc. which provides for a two year loan term and the language in the construction loan agreement which states that Iron Worker's "may extend the payment of the principal secured by the ... Mortgage Note ..." is evidence that a separate agreement to extend the loan for one year exists. In support of its argument that evidence of this separate contract for a loan "extension" should be admitted, Eagleview cites *Cohn v. McGurk,* 330 Pa.Super. 333, 479 A.2d 578 (1984).

In *Cohn, supra,* decedent provided in her will that appellants, her brother and his wife, were to be her children's guardians and that sufficient funds to care for her five children would be provided by her estate. Appellee, decedent's personal representative, allegedly agreed to give appellants sufficient funds to purchase a new house large enough to accommodate their family plus decedent's children. Relying

on their understanding that the money was a gift from the estate, appellants placed a down payment on a new home. However, a dispute arose as to whether the money was a gift or a loan from the estate.

At the time of closing, appellee's attorney advised appellants that they would be required to execute a mortgage and note in favor of the estate, otherwise the purchase money would not be forthcoming. Appellants signed the loan documents, alleging they did so under duress. The mortgage provided that the money was to be repaid one year from the date of settlement. Appellants defaulted, and judgment was confessed. Appellants filed a petition to open and/or strike the judgment. At the hearing on their petition, appellants sought to offer evidence of their separate agreement with appellee-mortgagee, entered into prior to settlement, whereby appellee agreed to give them sufficient funds to purchase a new home pursuant to the decedent's will. In the alternative, appellants sought to offer evidence of another separate agreement with appellee-mortgagee, entered into contemporaneously with settlement, whereby appellee agreed that funds from the decedent's estate would be provided to appellants within one year, thereby enabling them to repay the mortgage. The lower court refused to permit them to offer such evidence on the basis of the parol evidence rule. However, we ruled that the parol evidence rule did not bar such evidence of the separate agreements. *Cohn,* 479 A.2d at 582–583.

Upon review, we conclude that *Cohn, supra,* is distinguishable from the case at bar. Generally, it is true that the parol evidence rule does not bar evidence of separate contracts entered into prior to or contemporaneously with the contract in question. *Cohn,* 479 A.2d at 582. In *Cohn, supra,* evidence of the separate contracts was not offered to alter the terms of the mortgage but, rather, to explain that appellee-mortgagee's refusal to comply with decedent's will precipitated appellants-mortgagors' breach of the mortgage agreement, i.e., had appellee given them the funds as agreed, they would have complied with the terms of the mortgage and note. Here, however, Eagleview seeks to introduce evidence of a

separate agreement for the sole purpose of *varying* the terms of the mortgage. The evidence is not offered to explain why Eagleview failed to repay the loan within eighteen months as required but, rather, is offered to explain that the eighteen month repayment period was extended. The alleged separate agreement herein is not, as in *Cohn, supra,* a true separate contract related to a different subject matter.

Fourth, Eagleview alleges that it entered into the agreement under duress and therefore the parol evidence rule does not apply. Eagleview points out that if it did not execute the mortgage note with the eighteen month loan term, it would have lost the $50,000 down payment on the property to be used in the joint venture. The agreement of sale on that property had no mortgage contingency clause.

Once again, we agree with Eagleview's general statement of the law that parol evidence would be admissible to demonstrate that they executed the agreement under duress. *Cohn,* 479 A.2d at 582; 15 P.L.E., *Evidence,* § 305. However, "duress" alleged in the case *sub judice* is not of the type contemplated by *Cohn, supra,* wherein the mortgagors and their family would have lost their down payment on their new residence and, simultaneously, would have been left homeless. *See Cohn,* 479 A.2d at 583.[3] Presently, Dennis Meinhart, Eagleview's President, entered into the agreement of sale on the property on January 4, 1988, well before the joint venture agreement was even finalized. He is a sophisticated businessman who at all times relevant hereto was represented by legal counsel. Any problems associated with his signing of the agreement of sale without a mortgage contingency clause were caused Mr. Meinhart himself, not by Iron Worker's Savings and Loan Association. Consequently, we find Eagleview has failed to produce clear, direct, precise and believable evidence of duress.

In its fifth argument related to the parol evidence rule, Eagleview argues that there was an agreement entered

3. Further, in *Cohn, supra,* appellants-mortgagors did not even know that they would be required to execute a mortgage until mortgagee's attorney arrived at the settlement with the mortgage and note.

into after the mortgage note was executed to extend the term of the loan. Eagleview correctly states that the parol evidence rule does not bar evidence of a subsequent modification of a written contract. *Nicolella v. Palmer*, 432 Pa. 502, 508, 248 A.2d 20, 23 (1968); *Hamilton Bank v. Rulnick*, 327 Pa.Super. 133, 136, 475 A.2d 134, 136 (1984). However, Eagleview must present clear, direct, precise and believable evidence of its meritorious defense to the confessed judgment, *Suburban*, 502 A.2d at 232, and our review of the record confirms the lower court's conclusion that Eagleview has not done so with respect to this alleged "subsequent" agreement to extend the loan.

Eagleview's President, Dennis Meinhart, in his deposition, testified that when he asked John Whitig, Iron Worker's President, about a loan extension, Mr. Whitig stated, "Dennis, we are in the deal. We have our own company [IWS, Inc.] to protect. We are going to extend it. Don't worry about it." Deposition of Meinhart, p. 66. However, every time Mr. Meinhart subsequently inquired about a loan extension, Mr. Whitig did not state that the loan would be extended but, rather, "always just put [Mr. Meinhart] off." Deposition of Meinhart, p. 66. From his conversations with Mr. Whitig, Mr. Meinhart was well aware of the possibility of foreclosure if the loan was not repaid within eighteen months. Deposition of Meinhart, p. 66.

Eagleview also points to the minutes of the board meeting of both Iron Worker's and IWS, Inc., as support for its contention that a subsequent agreement to extend the loan term was reached. However, a review of the minutes of those meetings reveals quite a different result. The minutes of both IWS, Inc.'s and Iron Worker's board meeting are replete with references to severing their financial ties with Eagleview on September 30, 1989, the date the eighteen month loan term expired. The only references to a two year loan term were made before the mortgage note was signed, i.e., while the joint venture was still in the planning stages.[4]

4. At the board meeting of IWS, Inc., held on July 19, 1989, it was indicated that if Eagleview met certain conditions relating to the

After reviewing the record, we are convinced that Eagleview *attempted* to obtain a loan extension, but the parties *never reached* an agreement to that effect. In *Gloeckner v. Baldwin Township School District*, 405 Pa. 197, 200, 175 A.2d 73, 75 (1961), our supreme court stated:

> An oral contract changing the terms of a written contract must be of such specificity and directness as to leave no doubt of the intention of the parties to change what they had previously solemnized by a formal document. The oral evidence must be of such a persuasive character that it moves like an ink eradicator across the written paper, leaving it blank so that the parties in effect start afresh in their ... mutual commitments.

The fact that the Iron Worker's and Eagleview may have discussed a possible extension does not amount to clear, direct, precise and believable evidence that a separate contract for an extension was formed. *Suburban*, 502 A.2d at 232 (standard of review); *cf., Hamilton, supra* (oral testimony was inadequate as a matter of law to modify prior contract).

 Finally, Eagleview contends it presented sufficient evidence to raise a jury question on whether Iron Worker's breached its confidential relationship with Eagleview. In Pennsylvania, when the relationship of parties to an agreement is one of trust and confidence, arm's length bargaining is not presumed, and overreaching by the dominant party for his own benefit is grounds for rejection of the transaction by the aggrieved party. *Frowen v. Blank*, 493 Pa. 137, 143–144, 425 A.2d 412, 416 (1981); *Ruggieri v. West Forum Corp.*, 444 Pa. 175, 282 A.2d 304 (1971). Once a confidential relationship is shown, it is the obligation of the party attempting to enforce the terms of that agreement to prove that there has not been a breach of that trust. *Frowen*, 425 A.2d at 416.

number of houses sold and its "loan to value ratio", Iron Worker's would consider providing Eagleview with a one year extension on the three remaining lots. Reproduced Record, p. 90. However, Eagleview *does not argue that it met those conditions* and, therefore, a new bargain was struck. Rather, Eagleview argues it was *always* the parties' understanding that the loan would be extended.

■ Eagleview first submits that Iron Worker's breached its confidential relationship with Eagleview which arose from the joint venturer status of IWS, Inc., Iron Worker's alter ego. Eagleview correctly submits that since it and IWS, Inc., are joint venturers, there is confidential relationship between it and IWS, Inc., and they owe each other a fiduciary duty of the utmost good faith. *See Snellbaker v. Herrmann,* 315 Pa.Super. 520, 529, 462 A.2d 713, 718 (1983). Eagleview contends that IWS, Inc., is the alter ego of Iron Worker's and, therefore, it too owes Eagleview a fiduciary duty to act with scrupulous honesty. In support of its "alter ego" theory, Eagleview notes that Iron Worker's and IWS, Inc., share certain board members and officers and that Iron Worker's is the sole shareholder of IWS, Inc. Eagleview also points to the minutes of the board meetings of Iron Worker's and IWS, Inc., which indicate that Iron Worker's performed acts on behalf of IWS, Inc., and *visa versa.* In other words, Eagleview asks that it be allowed to attempt to pierce the corporate veil of IWS, Inc., and impute a fiduciary duty upon Iron Worker's.

■ As we stated in *Village at Camelback v. Carr,* 371 Pa.Super. 452, 461, 538 A.2d 528, 533 (1988), *aff'd per curiam,* 524 Pa. 330, 572 A.2d 1 (1990):

Piercing the corporate veil is admittedly an extraordinary remedy preserved for cases involving exceptional circumstances. As some courts have phrased it, liability for the acts of a corporation may be assessed against the owners thereof wherever equity requires that such be done either to prevent fraud, illegality or injustice or when recognition of the corporate entity would defeat public policy or shield someone from public liability for crime. *Zubik v. Zubik,* 384 F.2d 267 (3d Cir.1967), *cert. denied,* 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968).

Instantly, Eagleview has not presented clear, direct, precise and believable evidence that the corporate veil should be pierced. The evidence does not reveal that IWS, Inc. is merely a sham corporation, constituting a facade for the operation of Iron Worker's. Rather, the evidence of record

reveals that the corporate formalities have been observed, and, although both companies share some directors and officers, IWS, Inc. acted as a separate corporate entity through the period in question. *See Village at Camelback*, 538 A.2d at 533 (factors to consider when deciding whether to pierce corporate veil). In sum, we concur with the lower court's conclusion that there was not clear, direct, precise and believable evidence which raised a jury question related to piercing the corporate veil of IWS, Inc.

Eagleview also submits that Iron Worker's breached its confidential relationship with Eagleview which arose because of the attorney-client relationship between Eagleview's President, Dennis Meinhart and John R. Larkin, Esquire, solicitor for Iron Worker's and a member of both Iron Worker's and IWS, Inc.'s board of directors. Attorney Larkin and Mr. Meinhart were long-time friends and business associates. Attorney Larkin had served as Mr. Meinhart's legal counsel for many years. In fact, Attorney Larkin approached Mr. Meinhart and proposed the joint venture between Eagleview and IWS, Inc, and Attorney Larkin became the primary contact between Iron Worker's and Mr. Meinhart.

However, Eagleview fails to consider that Attorney Larkin, very early on in the discussions about forming a joint venture, informed Mr. Meinhart that he had a conflict of interest and, in December of 1987, directed Mr. Meinhart to seek advise from other counsel concerning the joint venture and related legal matters. Mr. Meinhart did discuss all further legal matters with Steven G. Brown, Esquire, and another attorney from Attorney Brown's law firm, Denis Dunn, Esquire.[5] At all relevant times hereto, Eagleview (and Mr. Meinhart) was represented by and consulted with counsel other than Attorney Larkin on the matter *sub judice*. Therefore, we agree with the trial court that Eagleview failed to present clear, direct, precise and believable evidence to demonstrate that a

---

**5.** Mr. Meinhart, in his deposition, testified that he had, on previous occasions, employed Attorney Dunn as his counsel and that he had a long-standing relationship with the law firm of Petrikin, Wellman, Damico, Carney & Brown, where Attorneys Brown and Dunn practiced.

confidential relationship was violated because of Mr. Meinhart's and Attorney Larkin's previous relationship.

As to the appeal docketed at 283 Philadelphia 1991, we find, in conclusion, that Eagleview has failed to present clear, direct, precise and believable evidence of a meritorious defense to the confessed judgment. Accordingly, we affirm the court's order which denied Eagleview's petition to open the judgment by confession.[6]

Turning to the appeal docketed at 284 Philadelphia 1991, we note that the order in question was entered on the day following the denial of Eagleview's petition to open the confessed judgment. The order denied Eagleview's motion to compel production of the joint report of examination performed on Iron Worker's Savings and Loan Association by the Pennsylvania Department of Banking and the Federal Home Loan Bank, Office of Regulatory Functions. It also granted the Pennsylvania Department of Banking's motion to quash the subpoena for their report.

In its discovery motion, Eagleview alleged that it believed the joint report contained information relevant to Iron Worker's "refusal to abide by its agreement to extend the repayment period for an additional (12) months." Motion to Compel Production of Report of Joint Examination, 12/3/90, ¶ 11. The Pennsylvania Department of Banking refused to release the joint report on the grounds that the information was privileged pursuant to the Freedom of Information Act.[7]

---

6. We note that Iron Worker's did not assert that Eagleview had defaulted upon the loan until January 18, 1990, over three and one-half months after the repayment period expired on September 30, 1989. Further, it was not until April 11, 1990, that Iron Worker's filed a complaint for judgment by confession and entered judgment against Eagleview and IWS, Inc. Thus, Eagleview, in effect, had over two years to repay the loan prior to entry of the judgment by confession.

7. We note that the Pennsylvania Department of Banking moved to quash the subpoena on the grounds that Eagleview failed to comply with the federal administrative guidelines governing disclosure of information related to financial institutions. The Freedom of Information Act, 5 U.S.C.A. § 552, exempts from its mandatory disclosure provisions, information "contained in or related to examination, operation or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions."

The lower court denied the motion to compel production of the joint report on the grounds that it was moot, since the court had already denied Eagleview's petition to open the judgment by confession.

When faced with a similar request for privileged financial information, our supreme court stated, "[U]pon a proper showing and for a legitimate purpose . . ., the evidence may be subpoenaed, and the manner and extent of the disclosure of the contents of such records still remains under the discretionary control of the trial judge." *Commonwealth v. Mellon National Bank & Trust Co.*, 360 Pa. 103, 112, 61 A.2d 430, 435 (1948). Even if we assume that Eagleview's desire to obtain the report is for a legitimate purpose and, therefore, the Banking Department *may* be compelled to disclose the contents of the report, we nevertheless do not conclude that Eagleview is entitled to subpoena the report. In supervising discovery, the trial court has broad discretion to take such action as it deems appropriate to insure *prompt* and *adequate* discovery. *Kerns v. Methodist Hospital*, 393 Pa.Super. 533, 574 A.2d 1068, 1073 (1990); *Wertz v. Kephart*, 374 Pa.Super. 274, 279, 542 A.2d 1019, 1022 (1988). Our review reveals that the trial court did not abuse its discretion in finding that the discovery motion was moot, since Eagleview enjoyed adequate discovery.

During discovery, Eagleview deposed every relevant witness and was provided a multitude of documents, including the minutes to the meetings of the board of directors of IWS, Inc.,

The report in question clearly falls within this exception, and thus, it is confidential, except for official purposes. Of course, the Office of Thrift Supervision which assumed the duties of the Federal Home Loan Bank Board pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989, may waive the privilege and release the information. *See* 31 C.F.R. 1.2(c)(5); 12 C.F.R. 510.5. Although Eagleview has initiated the administrative procedure to obtain the report, it nevertheless filed the motion to compel before the OTS had decided whether to release the joint report, in an effort to force disclosure of the report by the Pennsylvania Department of Banking. Since Eagleview failed to exhaust its administrative remedy, it should not be permitted to compel the Pennsylvania Department of Banking via the state court system. *Cf., Corning Savings and Loan Association v. Federal Home Loan Bank Board*, 571 F.Supp. 396 (E.D.Ark.1983).

and Iron Worker's. Even with that extensive, adequate discovery, Eagleview was unable to produce clear, direct, precise and believable evidence of a meritorious defense. See, Resolution of Appeal 283 Philadelphia 1991, *supra.* Eagleview now submits that the joint report *might* contain some reference to the joint venture and the loan agreement which could support its theory of a separate agreement. However, we view this request as nothing more than a "fishing expedition". Eagleview has completed an exhaustive search for evidence of a meritorious defense and was unable to find such evidence. There is no evidence of record to suggest that the joint report will support Eagleview's allegation that there was a separate agreement to extend the loan. In fact, the evidence of record points to the contrary, as it is undisputed that Eagleview executed the mortgage note knowing it had a repayment term of eighteen months. In sum, we find that Eagleview had an adequate opportunity for discovery and, under the circumstances, we cannot say that it was error to deny this discovery request. *Cf., Kerns, supra* (summary judgment not premature despite outstanding discovery requests, where proposed discovery would not further inquiry); *Thomas v. Duquesne Light Co.,* 347 Pa.Super. 492, 498–499, 500 A.2d 1163, 1167 (1985) (same).

In the appeal at 285 Philadelphia 1991, Eagleview raises a similar issue related to its discovery request for certain documents created by John R. Larkin, Esquire, and its request to reconvene Attorney Larkin's deposition. With this motion, Eagleview desired to secure additional documents which Attorney Larkin had withheld from Eagleview on the grounds that they were subject to the attorney-client privilege. See Pa.R.C.P. 4003.3 ("discovery shall not include disclosure of the mental impressions of a party's attorney of his conclusions, opinions, memoranda, notes or summaries, legal research or legal theories"). In essence, Eagleview submits certain, unspecified documents which were prepared by Attorney Larkin while acting in his capacity as a member of the board of directors Iron Worker's and IWS, Inc., were improperly withheld on the false grounds that those documents were

prepared by Attorney Larkin while acting in his capacity as Iron Worker's solicitor.[8]

The lower court concluded that this discovery motion was also moot given the fact that it had denied Eagleview's petition to open judgment by confession. We do not believe such a decision to be an abuse of discretion. As we previously found in appeal 283 Philadelphia 1991, the record does not contain clear, direct, precise and believable evidence that an agreement to extend the term of the loan ever existed between Iron Worker's and Eagleview. Eagleview's allegation that relevant information might be found via this discovery request is not sufficient to warrant opening the judgment by confession, given the fact the Eagleview was afforded adequate, if not exhaustive, discovery and yet was unable to produce evidence of a meritorious defense. *Cf., Kerns, supra* (summary judgment not premature despite outstanding discovery requests, where proposed discovery would not further inquiry); *Thomas, supra.*

At appeal 283 Philadelphia 1991, order denying petition to open/strike judgment by confession is affirmed.

At appeal 284 Philadelphia 1991, order denying motion to compel production of joint report of examiners is affirmed.

At appeal 285 Philadelphia 1991, order denying motion to compel production of documents and reconvene deposition is affirmed.

---

8. It should be noted that Attorney Larkin did turn over all documents related to the joint venture which he did not believe to be subject to the attorney-client privilege, and he also offered an explanation for those documents which he retained.