J-A19023-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| D. MICHAEL HARTLEY AND D. KENT HARTLEY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| STEPHEN J. HYNES, DOUGLAS J. HYNES, LESLIE A. HYNES AND MIDLANTIC ERECTORS, INC. | : | No. 1991 MDA 2017 |
| Appellants | : | |

Appeal from the Order Entered December 13, 2017
In the Court of Common Pleas of Berks County Civil Division at No(s):
16-2126

BEFORE: GANTMAN, P.J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.:             **FILED OCTOBER 19, 2018**

Appellants Stephen J. Hynes, Douglas A. Hynes, Leslie A. Hynes (collectively, the Hynes), and Midlantic Erectors, Inc. (Midlantic), appeal from the order denying their petition to open judgment by confession in favor of Appellees D. Michael Hartley and D. Kent Hartley (collectively, the Hartleys).[1] We affirm.

As the trial court observes, the factual background of this case is intricate but substantially undisputed by the parties.[2]  Metropolitan Steel

_____

[1] We refer to the individual Hynes by their first names.

[2] Nonetheless, we state the facts in the light most favorable to Appellants. ***Iron Worker's Savs. & Loan Ass'n v. IWS, Inc.***, 622 A.2d 367, 370 (Pa. Super. 1993) (**IWS**).

Industries, Inc. (MSI) is a steel fabrication company. MSI borrowed over $1.2 million from Wells Fargo, which was secured by a note (Wells Fargo Note) giving Wells Fargo a lien and security interest in MSI's assets, *i.e.*, the collateral for the loan. In pertinent part, the Wells Fargo Note provided that MSI would pay the outstanding balance and interest by July 1, 2015.[3] Default under the note would occur if MSI failed to make any payment or if a guarantor disputed the validity of any guaranty.[4] R.R. at 25a (listing ten events of default).[5]

To obtain the loan, each of the Hynes and Midlantic agreed to execute a guaranty unconditionally guaranteeing payment of MSI's loan to Wells Fargo. In pertinent part, the guaranty provides as follows:

> For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of Guarantor's Share of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lenders remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction

---

[3] The Wells Fargo loan provided for eleven monthly payments in one set amount, and the remainder in one "balloon" payment.

[4] The Wells Fargo Note referenced "Guarantor" and "Guaranty" but did not define those terms.

[5] We cite to the reproduced record for the parties' convenience.

> or counterclaim, and will otherwise perform Borrowers obligations under the Note and Related Documents.

R.R. at 32a, 38a, 44a, 50a.

The guaranty also explicitly waives numerous rights by the guarantor, including any right to require the lender to "resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor [and] to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person." *Id.* at 33a, 39a, 45a, 51a. Furthermore, the guaranty specifically states that the "Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral." *Id.* The guarantor also "waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both." *Id.*

Leslie, who owned MSI's stock, sold the stock to his sons, Stephen and Douglas. On November 6, 2014, Stephen and Douglas subsequently entered a stock purchase agreement to sell MSI to Steelco Acquisitions, LLC (Steelco). Steelco is owned by the Hartleys and non-party CECTraining, LLC, a company controlled by Charles Farris. Simply put, for a combined total of $5,000,000, Michael and Kent each purchased 30% of MSI's stock, and CECTraining

purchased the remaining 40%.[6] Of the $5,000,000 purchase price, $750,000 was payable at closing, with the remainder payable under a promissory note (Hynes Promissory Note) executed by Steelco that same day.

Section 7.4 of the stock purchase agreement provided that Steelco could offset the amount owed under the Hynes Promissory Note in accord with the following:

> In event that Purchaser should determine that that the Company actually had (i) less collectible Accounts Receivable as of September 30, 2014, then Purchaser shall notify the Shareholders of the same, and the Note shall be offset by the amount of the deficit, or (ii) greater Accounts Payable as of September 30, 2014, then Purchaser shall notify the Shareholders of the same, and the Note shall be offset by the amount of the excess.

R.R. at 301a.

On February 1, 2015, Steelco made an initial installment payment under the Hynes Promissory Note. On April 29, 2015, the Hartleys and CECTraining advised the Hynes that they would be invoking Section 7.4 and not make payments due under the Hynes Promissory Note. *Id.* at 194a. They

---

[6] Steelco, the Hartleys, and CECTraining had executed an assignment and assumption agreement, in which Steelco assigned its rights to purchase the MSI stock directly to the Hartleys and CECTraining. In conjunction with the execution of the (1) stock purchase agreement and (2) assignment and assumption agreement, MSI, Wells Fargo, the Hynes, the Hartleys, and CECTraining signed a consent agreement. The agreement provided that Wells Fargo consented to the stock sale of MSI as long as the Wells Fargo loan was paid before any other debts. The Hynes and Midlantic each signed a reaffirmation of commercial guaranty, which confirmed their guarantor status of the Wells Fargo loan.

suggested that MSI had debts and accounts payable in excess of what was represented in the stock purchase agreement. *Id.* at 195a. Therefore, the Hartleys and CECTraining withheld payment. MSI failed to make a payment under the Wells Fargo Note, including the final payment owed by July 1, 2015.[7]

On July 31, 2015, Wells Fargo notified all parties, including MSI, the Hynes, and Midlantic, of the default under the Wells Fargo Note. On September 21, 2015, the Hartleys purchased the Wells Fargo Note and the above-mentioned guaranties under a loan sale agreement for the full value of the then-outstanding amount owed to Wells Fargo, *i.e.*, approximately $1.2 million. Accordingly, the Hartleys assumed the role of Wells Fargo, the lender, in the Wells Fargo Note, and also received the Hynes Promissory Note.

Subsequently, on March 10, 2016, the Hartleys became the sole shareholders of MSI.[8] MSI continued to have financial issues, and ultimately filed for bankruptcy on August 3, 2016. East Coast SteelFab, LLC, a company owned by the Hartleys, offered to purchase MSI's assets. The bankruptcy

---

[7] On July 24, 2015, Appellants sued Steelco, the Hartleys, CECTraining, and Farris. That lawsuit, which is separate from the one before us, raises various claims regarding payment under the Hynes Promissory Note and is still ongoing. The most recent activity on the docket was on October 9, 2018, when the Hynes and Midlantic moved to strike the objection of the Hartleys and Steelco to a proposed third-party subpoena. Docket, No. 15-15579 (C.C.P. Berks).

[8] MSI purchased CECTraining's shares.

trustee for MSI and the United States Bankruptcy Court for the Eastern District of Pennsylvania approved the sale. The court's order approving the sale noted that the Hartleys would have a secured claim against MSI for around $1.2 million—the amount apparently owed under the Wells Fargo Note.[9]

On December 7, 2016, the Hartleys filed a complaint for confession of judgment against Appellants for $1,392,547.29, which included the $1.2 million principal, interest, and counsel fees. R.R. at 6a. On January 12, 2017, Appellants filed a petition to open the judgment, which raised several defenses. First, Appellants argued that the Wells Fargo Note was satisfied when East Coast SteelFab purchased MSI's assets at the bankruptcy sale. *Id.* at 140a-41a. Second, after the Hartleys purchased the Wells Fargo Note, Appellants contended that they are entitled to a discharge because the Hartleys impaired or otherwise failed to preserve MSI's assets—the collateral for the Wells Fargo Note. *Id.* at 142a. Third, Appellants claimed the Hartleys acted in bad faith by intentionally or negligently mismanaging MSI by failing to sell MSI's assets to satisfy the Wells Fargo Note. *Id.* Although Appellants' petition did not argue that the guaranties were invalid, their brief in support argued that the guaranties' waiver of defenses should be invalid when "the holders of a note [*i.e.*, Appellees,] are simultaneously in full control of the principal obligee on the note [*i.e.*, MSI]." *Id.* at 522a.

---

[9] Appellants' brief did not address this particular amount.

- 6 -

Following Appellees' brief in opposition and oral argument, the parties filed supplemental briefs addressing the validity of the guaranties' waiver-of-defenses clause. Appellants argued that the Pennsylvania Uniform Commercial Code (UCC) invalidated the guaranties' waiver of Appellants' "impairment of collateral defense." *Id.* at 576a. Appellees disagreed. *Id.* at 564a.

The trial court denied Appellants' petition to open the judgment on December 13, 2017. Appellants timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(b) statement.

Appellants raise the following questions on appeal:

1. Did the trial court err by not finding that the confessed judgment should be opened because (1) Creditor Appellees D. Michael Hartley and D. Kent Hartley (the "Hartleys"), who were 100 percent owners of the principal Debtor Metropolitan Steel Industries, Inc. ("MST"), and thus owed themselves the full amount of the Wells Fargo Loan, intentionally impaired the collateral for the Wells Fargo Loan by refusing to pay off a single penny of the loan or sell the company's assets to satisfy the debt and ultimately drove Metropolitan Steel Industries into bankruptcy knowing they would just pursue the Hynes Defendants instead, and (2) the waiver of defenses contained in the commercial guaranties provided by the Hynes Defendants is void and unenforceable to the extent that it conflicts with the provisions of the Uniform Commercial Code, as adopted and codified in Pennsylvania, that require creditors to use reasonable care to preserve collateral, as set forth in 13 Pa. C.S.A. § 9207(a)?

2. Did the trial court err by not finding that principles of equity required that the confessed judgment be opened because the Hartleys had acted in bad faith by deliberately, or at the very least grossly negligently, mismanaging MSI into bankruptcy and destroying the value of its assets while holding the Wells Fargo Loan, before purchasing the company's assets out of bankruptcy free of all liens and encumbrances?

Appellants' Brief at 6-7.

We summarize Appellants' arguments for both of their issues together. Appellants begin by asserting that under 13 Pa.C.S. § 9207(a), a "secured party shall use reasonable care in the custody and preservation of collateral in [its] possession." *Id.* at 23 (quoting 13 Pa.C.S. § 9207(a)) (brackets in original and internal quotation marks omitted); *id.* at 23-24 (citing caselaw recognizing the defense of impairment of collateral). Appellants concede that a guarantor may waive such a defense, but maintain that any such waiver would violate the anti-waiver provisions of the Pennsylvania UCC. *Id.* at 24-25 (citing *Ford Motor Credit Co. v. Lotosky*, 549 F. Supp. 996 (E.D. Pa. 1982)).[10] Appellants claim that no Pennsylvania state court has addressed the "waivability of a creditor's duty to use reasonable care to preserve collateral" but assert that several states have held that such a duty is not waivable. *Id.* at 26-27. Appellants then argue that the record establishes that the Hartleys impaired MSI's collateral. *Id.* at 28-29. Appellants fault the

_____

[10] We recognize that "federal court decisions do not control the determinations of the Superior Court. Our law clearly states that, absent a United States Supreme Court pronouncement, the decisions of federal courts are not binding on Pennsylvania state courts, even when a federal question is involved." *NASDAQ OMX PHLX, Inc. v. PennMont Secs.*, 52 A.3d 296, 303 (Pa. Super. 2012) (citation omitted). In any event, as explained below, *Ford Motor Credit* construed 13 Pa.C.S. § 9501, which was subsequently replaced and renumbered. Appellants elected to waive any argument addressing the applicability, if any, of section 9501's statutory successor.

trial court for not reviewing the guaranties against that backdrop. *Id.* at 31. Appellants similarly suggest that their failure to object to the guaranty's waiver clause at the time of execution was not a waiver because a clause that violates public policy is void. *Id.* at 31-32.

Appellants also assert that they are entitled to equitable relief given the Hartleys' actions in purchasing MSI, causing MSI to file for bankruptcy, and then entering confessed judgments. *Id.* at 34. Appellants suggest that the bankruptcy court's approval of the sale of MSI's assets to the Hartleys did not prevent them from challenging the confession of judgment based on the Hartleys' bad faith. *Id.* at 36.

We review an order denying a petition to open a confessed judgment for an abuse of discretion. *IWS*, 622 A.2d at 370. The *IWS* Court provides as follows:

> Traditionally, a confessed judgment will be opened in only a limited number of circumstances, and only when the person seeking to open acts promptly, alleges a meritorious defense and presents sufficient evidence of that defense to require submission of the issues to the jury. In making such a determination, the court employs the same standard as that of the directed verdict— viewing all the evidence in the light most favorable to the petitioner and accepting as true all evidence and proper inferences therefrom supporting the defense while rejecting adverse allegations of the party obtaining the judgment.

*Id.* (citations and quotation marks omitted). "Equitable considerations are generally no longer relevant unless related to a particular defense asserted." *Bell Fed. Sav. & Loan Ass'n of Bellevue v. Laura Lanes, Inc.*, 435 A.2d 1285, 1286 (Pa. Super. 1981) (*Bellevue*) (citation, quotation marks, and

alteration in original omitted); *accord Homart Dev. Co. v. Sgrenci*, 662

A.2d 1092, 1097 (Pa. Super. 1995). Equity must follow the law. *Murray v.*

*Willistown Twp.*, 169 A.3d 84, 94 (Pa. Super. 2017).

Pennsylvania Rule of Civil Procedure 2959 addresses the opening of a

judgment.

> The court shall dispose of the rule on petition and answer, and on
> any testimony, depositions, admissions and other evidence. The
> court for cause shown may stay proceedings on the petition
> insofar as it seeks to open the judgment pending disposition of
> the application to strike off the judgment. If evidence is produced
> which in a jury trial would require the issues to be submitted to
> the jury the court shall open the judgment.

Pa.R.Civ.P. 2959(e).[11]

Before quoting the relevant Pennsylvania UCC statutes, we state the

rules of statutory construction, which are well-settled:

> The Statutory Construction Act, 1 Pa.C.S. §§ 1901–1991, sets
> forth principles of statutory construction to guide a court's efforts
> with respect to statutory interpretation. In so doing, however, the
> Act expressly limits the use of its construction principles. The
> purpose of statutory interpretation is to ascertain the General
> Assembly's intent and to give it effect. In discerning that intent,
> courts first look to the language of the statute itself. If the
> language of the statute clearly and unambiguously sets forth the
> legislative intent, it is the duty of the court to apply that intent
> and not look beyond the statutory language to ascertain its

---

[11] Rule 2959(c) provides that a "party waives all defenses and objections which are not included in the petition or answer." Pa.R.Civ.P. 2959(c). Here, Appellants did not challenge the validity of the guaranties' waiver-of-defenses clause until oral argument, during which the trial court apparently ordered supplemental briefs on this particular argument. Because the trial court did not find waiver, we similarly decline. Indeed, we note that the trial court quoted Rule 2959(c) without further discussion. Trial Ct. Op. at 4.

meaning. Courts may apply the rules of statutory construction only when the statutory language is not explicit or is ambiguous.

. . . We must read all sections of a statute together and in conjunction with each other, construing them with reference to the entire statute. When construing one section of a statute, courts must read that section not by itself, but with reference to, and in light of, the other sections. Statutory language must be read in context, together and in conjunction with the remaining statutory language.

Every statute shall be construed, if possible, to give effect to all its provisions. We presume the legislature did not intend a result that is absurd, impossible, or unreasonable, and that it intends the entire statute to be effective and certain. When evaluating the interplay of several statutory provisions, we recognize that statutes that relate to the same class of persons are *in pari materia* and should be construed together, if possible, as one statute.

***Retina Assocs. of Greater Phila., Ltd. v. Retinovitreous Assocs., Ltd.***,

176 A.3d 263, 270 (Pa. Super. 2017) (citations and internal quotation marks

omitted) (***Retina***). "In construing a statute, the court must ascertain and

give effect to the legislative intention as expressed in the language of the

statute, and cannot, under its powers of construction, supply omissions in a

statute, especially where it appears that the matter may have been

intentionally omitted." ***In re T.S.***, ____ A.3d ____, 2018 WL 4001825, *11 (Pa.

2018) (citation and brackets omitted).

With regard to whether a contract or a particular contractual clause

violates public policy, the Pennsylvania Supreme Court has stated:

Public policy is more than a vague goal which may be used to circumvent the plain meaning of a statute. . . .

- 11 -

> Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest.  As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy.  Only dominant public policy would justify such action.  In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts contrary to public policy.  The courts must be content to await legislative action.
>
> It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring.  There must be a positive, well-defined, universal public sentiment, deeply integrated in the customs and beliefs of the people and in their conviction of what is just and right and in the interests of the public weal.  Only in the clearest cases, therefore, may a court make an alleged public policy the basis of judicial decision.

*Hall v. Amica Mut. Ins. Co.*, 648 A.2d 755, 760 (Pa. 1994) (citations and ellipses in original omitted); *see also Seebold v. Prison Health Servs., Inc.*, 57 A.3d 1232, 1245 n.19 (Pa. 2012) (stating it "is the Legislature's chief function to set public policy and the courts' role to enforce that policy, subject to constitutional limitations" (citation omitted)).

Section 3605 of the Pennsylvania UCC, Article 3, Negotiable Instruments, states that a party may not assert a defense of impairment of collateral if that party waived such a defense either generally or specifically:

> **(i) Other limitations on discharge.**—A party is not discharged under this section if:

*       *       *

- 12 -

(2) the instrument or a separate agreement of the party provides for waiver of discharge under this section either specifically or by general language indicating that parties waive defenses based on suretyship or impairment of collateral.

13 Pa.C.S. § 3605(i)(2).[12]

Section 9207 of the Pennsylvania UCC, Division 9, Secured Transactions, imposes a duty of care upon a secured party in possession of collateral:

**(a) Duty of care when secured party in possession.**—Except as otherwise provided in subsection (d),[13] a secured party shall use reasonable care in the custody and preservation of collateral in the secured party's possession.  In the case of chattel paper or an instrument, reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed.

**(b) Expenses, risks, duties and rights when secured party in possession.**—Except as otherwise provided in subsection (d), if a secured party has possession of collateral:

\* \* \*

(4) The secured party may use or operate the collateral:

(iii) except in the case of consumer goods, in the manner and to the extent agreed by the debtor.

---

[12] No party, however, explicitly addressed whether the guaranties at issue are negotiable instruments under article 3, qualify as "separate agreements" under 13 Pa.C.S. § 3605(i)(2), or are secured transactions under article 9.  All parties have seemingly construed the guaranties as subject under **both** articles.

[13] Subsection (d) addresses when "the secured party is a buyer of accounts, chattel paper, payment intangibles or promissory notes or a consignor."  13 Pa.C.S. § 9207(d).

13 Pa.C.S. § 9207(a), (b)(4)(iii).

Section 9602 lists the rights and duties that cannot be waived by a debtor or obligor:

> Except as otherwise provided in section 9624 (relating to waiver),[14] to the extent that they give rights to a debtor or obligor and impose duties on a secured party, the debtor or obligor may not waive or vary the rules stated in:
>
> > (1) section 9207(b)(4)(iii) (relating to expenses, risks, duties and rights when secured party in possession) . . . .

13 Pa.C.S. § 9602(1).  Comment 2 to section 9602 states that the "specified rights of the debtor and duties of the secured party may not be waived or varied except as stated."  *Id.* cmt. 2.  Comment 3 similarly states that section

_____

[14] Section 9624 follows:

> **(a) Waiver of disposition notification.**—A debtor or secondary obligor may waive the right to notification of disposition of collateral under section 9611 (relating to notification before disposition of collateral) only by an agreement to that effect entered into and authenticated after default.
>
> **(b) Waiver of mandatory disposition.**—A debtor may waive the right to require disposition of collateral under section 9620(e) (relating to mandatory disposition of consumer goods) only by an agreement to that effect entered into and authenticated after default.
>
> **(c) Waiver of redemption right.**—Except in a consumer-goods transaction, a debtor or secondary obligor may waive the right to redeem collateral under section 9623 (relating to right to redeem collateral) only by an agreement to that effect entered into and authenticated after default.

13 Pa.C.S. § 9624.

9602 "provides generally that the specified rights and duties 'may not be waived or varied.'" ***Id.*** cmt. 3. Section 9207(a) is not in the list of sections that cannot be waived under section 9602.

In ***Lotosky***, a federal district court was tasked with construing a prior version of the Pennsylvania UCC, specifically 13 Pa.C.S. § 9501(c), which provided as follows:

> **(c) Limitation on waiver of certain provisions.—**To the extent that they gave rights to the debtor and impose duties on the secured party, the rules stated in the following provisions of this title may not be waived or varied except as provided with respect to compulsory disposition of collateral (Section 9505(a)) and with respect to redemption of collateral (section 9506) but the parties may by agreement determine the standards by which the fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable.
>
> (1) Section 9502(b) and section 9404(b) insofar as they require accounting for surplus proceeds of collateral.
>
> (2) Section 9504(c) and section 9505(a) which deal with disposition of collateral.
>
> (3) Section 9505(b) which deals with acceptance of collateral as discharge of obligation.
>
> (4) Section 9506 which deals with redemption of collateral.
>
> (5) Section 9507(a) which deals with the liability of [a] secured party for failure to comply with this chapter.

*Lotosky*, 549 F. Supp. at 999 n.16 (quoting 13 Pa.C.S. § 9501(c) (repealed 2001)).[15]   According to the court in *Lotosky*, a comment to section 9501 codified

> this long standing and deeply rooted attitude: the specified rights of the debtor and duties of the secured party may not be waived or varied except as stated.
>
> 13 Pa.Con.Stat.Ann. § 9501 comment 4 . . . .  Thus, the statute and comments unequivocally declare that as a matter of public policy a creditor's duty to use reasonable care in the custody and preservation of collateral and upon default to dispose of the collateral in a commercially reasonable manner is not subject to waiver or modification by agreement.

*Id.* at 1001 (emphases and footnotes omitted).

Initially, section 3605 explicitly permits a separate agreement of a party to waive the defense of impairment of collateral.  *See* 13 Pa.C.S. § 3605(i)(2). Appellants signed separate agreements—the guaranties—explicitly waiving "any and all rights or defenses based on suretyship or impairment of collateral." *See* R.R. at 33a, 39a, 45a, 51a.  Appellants have not argued they are not parties.  Accordingly, after construing the plain language of the statute, as we must, *Retina*, 176 A.3d at 270, because Appellants signed separate agreements providing for waiver, section 3605 does not permit Appellants recourse.  *See* 13 Pa.C.S. § 3605(i)(2).

---

[15] As noted above, *Lotosky* construed the then-existing version of the Pennsylvania UCC.

Appellants, however, argue that their waiver—notwithstanding the language of section 3605—violates the Pennsylvania UCC's anti-waiver provisions. In support, Appellants cite **Lotosky**, which construed an older version of Article 9 and did not address section 3605. Appellants, however, have not presented any argument addressing the **present** version of Article 9 and any pertinent anti-waiver provisions. Absent any such argument, it would be inappropriate for us to adopt the reasoning of **Lotosky**.[16]

Regardless, assuming that section 9602 applies, whether in addition to or independently of section 3605, section 9602 lists the rights that may not be waived. **See** 13 Pa.C.S. § 9602. Section 9207(a), which imposes a duty of care upon a secured party in possession of collateral, is **not** among the rights listed in section 9602. **See id.** (omitting section 9207(a) from the list of rights and duties that cannot be waived). Appellants have not articulated how section 9602 may be construed to preserve the rights set forth in section 9207(a). **See generally Retina**, 176 A.3d at 270. Further, if the legislature intended to preserve any such right, then it could have been explicitly listed in section 9602. **See In re T.S.**, ____ A.3d at ____, 2018 WL 4001825 at *11. The legislature did not, and Appellants have not referred this Court to long-standing Pennsylvania jurisprudence or some other signal that this

---

[16] In any event, **Lotosky** does not bind this Court. **See NASDAQ OMX PHLX**, 52 A.3d at 303.

Commonwealth rejects the waiver of a defense of impairment of collateral. *See generally Seebold*, 57 A.3d at 1245 n.19; *Hall*, 648 A.2d at 760.[17] Thus, we decline to address whether Appellants' waivers are void on the basis of public policy.[18]

As for Appellants' arguments that they are entitled to equitable relief, we cannot consider the Hartleys' purported actions to the extent they do not relate to Appellants' alleged impairment of collateral defense. *See Bellevue*, 435 A.2d at 1286-87. To the degree the Hartleys' purported actions relate to their defense, we have previously held that such a defense was unavailable to Appellants as a matter of law and thus does not provide a basis for relief. *See Murray*, 169 A.3d at 94 (stating equity must give way to the law). In sum, we discern no abuse of discretion in the trial court's holding that Appellants have failed to demonstrate a meritorious defense. *See IWS*, 622 A.2d at 370.

Order affirmed.

---

[17] As Appellees pointed out, a party may waive the defense of impairment of collateral under Article 3. *See* 13 Pa.C.S. § 3605.

[18] Without a statutory basis to void their waiver, we need not address Appellants' argument that the record established the Hartleys impaired MSI's collateral.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/19/2018