432 A.2d 1053

**SILO REALTY CORPORATION, Appellant,**

v.

**REDEVELOPMENT AUTHORITY OF the CITY OF PHILADELPHIA.**

Superior Court of Pennsylvania.

Argued Dec. 4, 1980.

Filed July 17, 1981.

Walter W. Rabin, Philadelphia, for appellant.

Francis J. Moran, Philadelphia, for appellee.

Before PRICE, WATKINS and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The instant appeal arises from an order of the lower court affirming a Decree Nisi and entering a Final Decree, dismissing a complaint in equity which sought to compel the

specific performance of a contract. The Plaintiff-Appellant, Silo Realty Corporation (hereinafter referred to as "Silo"), sought to enforce rights it claimed arising out of a four party agreement relating to a property transaction. The other parties to the agreement were the Defendant-Appellee, Redevelopment Authority of The City of Philadelphia (hereinafter referred to as the "Authority"), Philadelphia Industrial Development Corporation (hereinafter referred to as "PIDC") and Philadelphia Builders Eastwick Corporation (hereinafter referred to as "Eastwick"). A lower court judge, sitting as a Chancellor in equity, held a hearing in the case. Afterwards, he entered an Adjudication setting forth findings of fact, discussion, and conclusions of law, and entered a Decree Nisi dismissing the Complaint. Thereafter, following the filing of exceptions by Silo, and argument thereon, the lower court judge filed an opinion denying the exceptions, and a Final Decree dismissing the Complaint.[1] On this appeal, Silo contends that in interpreting the four party agreement, the lower court erred, abused its discretion, and committed errors of law.

■■■ Our standard of review in the consideration of an appeal from a final decree in an equity action is well established. A chancellor's findings of fact, approved by the court en banc, are entitled to the weight of a jury's verdict and will not be disturbed on appeal if supported by adequate evidence. See *McDole v. Duquesne Brewing Co. of Pittsburgh*, 281 Pa.Super. 78, 83, 421 A.2d 1155, 1158 (1980), and cases cited therein. Such findings are controlling and the court's decree should not be reversed on appeal unless it appears either that the court abused its discretion, or that the court's findings lack evidentiary support, or that the

1. The lower court en banc did not consider the exceptions filed in this case. While Pa. R.C.P. 1519 states that such exceptions are ordinarily to be addressed to a court en banc, an exception is provided for cases in Philadelphia County. Such proceedings are there governed by Rule VII of the Special Rules, Court of Common Pleas, First Judicial District, Philadelphia County, promulgated July 31, 1963. This Special Rule allows the Philadelphia County trial judge to hear exceptions and requires no court en banc, unless requested by either the trial judge or by one of the parties in writing.

court capriciously disbelieved the evidence. *Davis v. Buckham*, 280 Pa.Super. 106, 110, 421 A.2d 427, 429 (1980). This principle is equally applicable in situations in which a single judge, as opposed to a court en banc, reviews the case. The findings of fact of a lower court judge in such circumstances have the force and effect of a jury verdict and will not be reversed on appeal absent an error of law or an abuse of discretion. *Gilmore v. Northeast Dodge Co., Inc.*, 278 Pa.Super. 209, 212, 420 A.2d 504, 505 (1980). As a caveat, however, we must remain cognizant that the chancellor's inferences and conclusions which are reasoned from the facts, as well as the legal conclusions drawn therefrom, are always subject to review by our Court. *McDole v. Duquesne Brewing Co. of Pittsburgh, supra.*

With these concepts in mind, we must now review the record established in this case. It shows that on or about September 11, 1964, the Authority entered into an agreement with Eastwick to develop and improve a tract of land in an industrial area. The land was titled in the Authority's name, and it was agreed upon by the Authority and Eastwick that all or a portion of the tract could be conveyed by the Authority to a nominee of Eastwick, provided that both Eastwick and the nominee independently agreed to develop the acreage in accordance with the Authority-Eastwick Agreement. Eastwick was required to develop slightly more than 204 acres and the total consideration for the tract was $2,282,820, or approximately $11,170 per acre. The following provisions of the Authority-Eastwick Agreement appear especially significant to the issues presented in this case:

"22. This Agreement shall be binding upon and inure to the benefit of the parties hereto, their successors and assigns . . . and any nominee of [Eastwick].

. . . . .

"27. [Eastwick] represents and agrees that its purchase of the Property and its other undertakings pursuant to this Agreement are and will be used for the purpose of redevelopment of the Property and not for speculation in land holding."

At some point of time in 1966, but prior to December 9, 1966, Eastwick and Silo entered into an Agreement of Sale for a part of the tract comprising approximately eight (8) acres. Pursuant to the nominee provision of the Authority-Eastwick Agreement, Eastwick selected Silo as its nominee to develop this acreage. Among other provisions of the Eastwick-Silo Agreement of Sale, we find the following particularly significant to the issues presented in this appeal:

"WHEREAS [Eastwick] is willing to sell a certain tract of land within the aforesaid area to [Silo] for development as a warehouse and general offices, in accordance with the terms, conditions and requirements of the aforesaid agreement between [Eastwick] and [Authority] and in accordance with terms, conditions, and requirements of the Eastwick Urban Renewal Plan, and

"WHEREAS, [Silo] is willing to purchase the aforementioned tract of ground and develop it in accordance with the aforementioned terms, conditions and requirements . . ."

In the Agreement of Sale, it was further provided that Silo would pay Eastwick $20,000.00 for the property, multiplied by the number of acres in the property as thereafter determined. A condition of the Agreement of Sale was that the Authority had to approve the conveyance of title to Silo. It is significant in this case and should be particularly noted that the purchase price of $20,000.00 per acre to be paid by Silo for the parcel exceeded the average cost of $11,170 per acre which Eastwick had agreed to pay to the Authority.

Following the execution of the Eastwick-Silo Agreement of Sale, a controversy arose between Eastwick and the Authority regarding the proper allocation of development costs in conjunction with the Silo transaction. This dispute was pertinent to the passage of a resolution by the Board of Directors of the Authority, on November 29, 1966. The resolution, in part, provided:

"BE IT RESOLVED by the Redevelopment Authority of the City of Philadelphia, having considered the request of

the Philadelphia Builders Eastwick Corporation to the purchase, sale and transfer of certain real estate . . . hereby authorizes the following:

1.  Execution, delivery and recording of deed to Philadelphia Builders Eastwick Corporation for 8 acres of land at a consideration of $77,971.30 for the purpose of developing said area with an improvement consisting of approximately 90,000 square feet to be used and occupied by the Silo Discount Center as a warehouse.

2.  Consenting to the sale by Philadelphia Builders Eastwick Corporation of said area to the Philadelphia Industrial Development Corporation for a consideration to be disclosed to the Redevelopment Authority at the time of settlement; and for a Sales Installment Agreement to be entered into by the Philadelphia Industrial Development Corporation and Silo Realty Corporation.

3.  Directing that all parties execute the form of agreement normally required by the Authority . . . pursuant to a certain Redevelopment Contract dated September 11, 1964 by the Authority and Philadelphia Builders Eastwick Corporation.

4.  Directing that any funds over and above the consideration here and before set forth, less costs of settlement including transfer taxes shall be deposited in an account at the Frankford Trust Company where same may accumulate interest, said deposit to be made on the following terms and conditions:

a). That the deposit be in the joint name of Philadelphia Builders Eastwick Corporation and Redevelopment Authority of the City of Philadelphia.

b). *That the deposit or account be withdrawn solely by the Redevelopment Authority,* after the Authority has made a determination as to what portion of said deposit may be allocated to development costs expended by the Redeveloper, *which determination shall be solely within the discretion of the Authority* and the approval of the Federal government. (emphasis added)

c). A formal agreement to be entered into by the Authority and the Redeveloper in form satisfactory to the Executive Director shall be filed with the Frankford Trust Company under which they agree to pay out all or a portion of the funds at the sole request of the Authority."

A copy of this resolution was then appended to an agreement which was executed on or about December 9, 1966, and which was entered into by the Authority, Eastwick, PIDC, and Silo.

In our review of the four party Agreement, for which Silo sought specific performance in this case, we find the following clauses to be noteworthy:

"WHEREAS, the AUTHORITY and EASTWICK entered into a Redevelopment Contract for Stage B Industrial of Eastwick Redevelopment Area, Eastwick Urban Renewal Area, and recorded in the Department of Records, in and for the City of Philadelphia, in Deed Book C.A.D. No. 272, page 54, etc., on September 11, 1964.

"WHEREAS, EASTWICK, by letter dated October 17, 1966 had requested the Authority to grant prior consent for the sale of a portion of the Eastwick Redevelopment Area by Eastwick to PIDC in accordance with the terms and conditions of the aforesaid Redevelopment Contract; and

"WHEREAS, PIDC, by letter dated October 14, 1966 has requested the AUTHORITY to grant prior written consent to PIDC to enter into an installment sale agreement with Silo, and

"WHEREAS, the AUTHORITY, by resolution number 5203 dated November 29, 1966 has granted such prior consent upon certain terms and conditions. A copy of said resolution is attached hereto and marked Exhibit 'A'.

. . . . .

"3. *Silo, also . . . agrees to assume and perform all of the terms, conditions and requirement contained in the above Redevelopment Contract between Eastwick (PBEC) and the Authority, as those conditions and requirements per-*

*tain to the land to be conveyed to PIDC...* (emphasis added)

"5. *The consideration payable for the transfer shall not exceed the actual consideration plus pro rata development costs paid by Eastwick (PBEC); it being the intent of this provision to preclude transfer of the property for profit prior to the conclusion of the improvements.*" (emphasis added).

Subsequent to the execution of the four party Agreement, and the Authority's Resolution attached thereto the Authority and Eastwick entered into yet another agreement which established an escrow fund for excess funds to be received in the sale of the parcel to Silo. Pertinent sections of this Agreement provide:

"WHEREAS, the parties hereto and the Philadelphia Industrial Development Corporation and Silo Realty Corporation have contemporaneously with the execution of the Agreement entered into a certain Agreement providing, inter alia, that the AUTHORITY shall grant prior written consent for the sale of a portion of the Eastwick Redevelopment Area, by EASTWICK (PBEC) to Philadelphia Industrial Development Corporation and an installment sale Agreement shall thereafter be entered into between the Philadelphia Industrial Development Corporation and Silo Realty Corporation; and

"WHEREAS, the prior written consent of the AUTHORITY is conditioned upon the creation of a certain escrow account to be established by the deposit of certain funds with the Frankford Trust Company, Philadelphia, Pennsylvania, upon the terms and conditions hereinafter set forth...

"1. At a date to be determined by mutual consent, there shall be two successive real estate settlements at the Title Insurance Corporation of Pennsylvania relating to the premises above described. At the first settlement, the AUTHORITY shall convey title to said premises to EASTWICK (PBEC) for a consideration of SEVENTY–SEVEN THOUSAND SEVEN HUNDRED NINETY–ONE AND

30/100 ($77,791.30) DOLLARS. At the second settlement, EASTWICK (PBEC) shall convey title to said premises to the Philadelphia Industrial Development Corporation for a consideration of ONE HUNDRED SIXTY THOUSAND AND NO/100 ($160,000.00) DOLLARS."

. . . . .

"4. The AUTHORITY shall in its sole and complete discretion make a determination which shall be approved by the Department of Housing and Urban Development of the United States of America, as to the total amount, if any, of the development costs of EASTWICK (PBEC) attributable to the property in question. When such determination has been made by the AUTHORITY, the amount so determined shall be paid from said account by the AUTHORITY to EASTWICK (PBEC), together with all accrued interest thereon. *The balance remaining in said escrow account, including interest, if any shall be considered the funds of the AUTHORITY.* (emphasis added)

. . . . .

"6. *The above-described determination of the AUTHOR-ITY as approved by the Department of Housing and Urban Development, shall be final and be binding upon EASTWICK (PBEC), its successors and assigns, and there shall be no right of appeal therefrom.*" (emphasis added)

At the settlement on the property transfer, all funds from the sale to Silo, in excess of $77,791.20, the selling price agreed between the Authority and Eastwick, were placed in the escrow fund controlled by the Authority. Subsequently, in July, 1967, it was determined by the Federal Department of Housing and Urban Development, as well as the Authority, that Eastwick had improperly attempted to gain $72,-320.99 in development costs concerning the land involved in the Silo transaction. As a consequence, no additional money was transmitted to Eastwick from the escrow fund controlled by the Authority. In conjunction with this matter, Eastwick has filed suit against the Authority and that action is still pending in the courts. Thus, at this time, a dispute

exists as to any further entitlement *by Eastwick* to any additional money from the escrow fund.

■ Silo gained knowledge of the Federal agency's determination regarding the allocation of development costs and on June 6, 1968, an attorney representing Silo sent a letter to the Authority claiming that any excess amount in the escrow fund was refundable to Silo. Silo filed the instant action following the Authority's refusal to pay it any amount from the escrow fund. The facts we have related above were found to exist by the lower court, and such findings are not really challenged by Silo on this appeal, as the evidence consisted entirely of documents and admissions. However, Silo does dispute the lower court's interpretation of the facts and the conclusions it reached thereon. We have carefully examined all of the documents and other facts of record and find no basis for a reversal of the lower court in this case.

The lower court, as explained in its opinion in support of the Final Decree, found that Silo firmly agreed to pay $20,000.00 per acre, or $160,000.00 for the eight acres in issue, and that this obligation of Silo was never amended in any way by it or any other party in any of the other existing agreements or other documents in evidence in the case. Silo entered into the Agreement of Sale with Eastwick, which in addition to setting a specific price for Silo for the land, also provided that the transfer was subject to the terms of the original agreement between the Authority and Eastwick. Both that Authority-Eastwick agreement and the four party Agreement leave room for no conclusion other than that the Authority would receive the excess funds, if any, *from Silo's purchase price*, after the deduction of both the selling price as between the Authority and Eastwick, and actual redevelopment costs which might be proven by Eastwick.

Silo contends that the following clause, which was Paragraph 5 of the four party Agreement, provides the main support for its position in this case: "5. The consideration payable for the transfer shall not exceed the actual consideration plus pro rata development cost paid by EASTWICK;

its being the intent of this provision to preclude transfer of the property for profit prior to the completion of the improvements." That provision, while it could have been more clearly drafted, may not be logically construed to constitute an alteration of or an amendment to Silo's agreement to purchase the property for $20,000 an acre. It is evident, from all of the documents of record, that the clause was designed to preclude a realization of profit by Eastwick in the transaction. The lower court found and we agree that the language in that clause obviously must be construed to include the implied words to the effect that: "... the consideration payable [*to Eastwick*] for the transfer shall not exceed..."

All of the four entities in the transaction were not parties to every agreement involved in the total transaction. However, the record contains all of the various agreements which are relevant to and explain the transfer of property from the Authority to Eastwick, and ultimately to Silo. It is clear from these documents that Silo had a fixed obligation to pay the set amount of $160,000.00 clearly provided in its Agreement of Sale with Eastwick. It is also certain that Eastwick, in that total transaction, was not to make a profit, but could only recover the amount it paid the Authority for the property, plus any valid redevelopment costs Eastwick experienced.[2] Any profit, representing the difference between Silo's purchase price and Eastwick's entitlement, was to inure to the benefit of the Authority. The money which would cover any redevelopment costs was put into an escrow account in the joint names of the Authority and Eastwick, in accordance with the resolution of the Authority's Board. That resolution was incorporated into the four party Agreement, to which Silo was a party. Payments from that escrow were to be made at the sole request of the Authority. From all of the agreements and documents, it is clear that Silo was to have no ownership or even interest in that fund,

---

**2.** We make no finding either supporting or rejecting Eastwick's claimed entitlement to monies attributable to alleged redevelopment costs, which claim we understand to be in litigation.

nor any right to a reduction in the purchase price it had agreed to pay for the property.

The inferences and conclusions reached by the lower court appear totally proper and free of error, and we find no basis to disturb the lower court's findings of fact or conclusions of law.

The order of the lower court is therefore affirmed.