497 A.2d 612

**In re ESTATE OF Ethel McSorley MIHM, Deceased.**

**Appeal of STERLING LAND COMPANY, John McSorley, III, Michael McSorley, David McSorley, Cathleen McSorley Stanton, Mary McSorley, Robert McSorley and Robert McSorley, Jr.**

Superior Court of Pennsylvania.

Argued March 6, 1985.

Filed Aug. 16, 1985.

2

John J. McLean, Jr., Pittsburgh, for appellants.

Kenneth E. Lewis, Pittsburgh, for appellee.

Before BROSKY, WIEAND and LEDERER,* JJ.

WIEAND, Judge:

The orphans' court refused to order specific performance of a written agreement which purported to obligate the Estate of Ethel McSorley Mihm, deceased, to sell for $475,000 a one-third interest in a closely held, family corporation

---

* The Honorable William J. Lederer, Senior Judge, of the Court of Common Pleas of Philadelphia, Pennsylvania, is sitting by designation.

allegedly worth $1,800,000. This appeal was filed by the owners of the remaining two-thirds. We affirm.

The task of a reviewing court is to determine whether the record contains evidence which will support the trial judge's findings of fact, not to substitute its view of the evidence for his. *United States Steel Corp. v. Hoge*, 304 Pa.Super. 182, 188 n. 6, 450 A.2d 162, 165 n. 6 (1982), *rev'd on other grounds*, 503 Pa. 140, 468 A.2d 1380 (1983). "Even meager or uncorroborated evidence will support the [trial court's] findings if the evidence is of record and properly before the court." *Id.* It is also the responsibility of a reviewing court to determine whether the law was correctly applied to the facts by the trial court. See: *Lawner v. Engelbach*, 433 Pa. 311, 315, 249 A.2d 295, 297 (1969); *Silo Realty Corp. v. Redevelopment Authority of the City of Philadelphia*, 289 Pa.Super. 67, 70, 432 A.2d 1053, 1055 (1981); *Barbet v. Ostovar*, 273 Pa.Super. 256, 260, 417 A.2d 636, 638 (1979).

A review of the law applicable to an action for specific performance of a contract was included in the opinion of the Supreme Court in *Snow v. Corsica Construction Co.*, 459 Pa. 528, 329 A.2d 887 (1974).

"Inadequacy of consideration is not ground for refusing to decree specific performance of a contract to convey real estate, unless there is evidence of fraud or unfairness in the transaction sufficient to make it inequitable to compel performance: *Harris v. Tyson*, 24 Pa. 347, 360; *Graham v. Pancoast*, 30 Pa. 89, 97; *Cummings's App.*, 67 Pa. 404; *Bowers v. Bennethum*, 133 Pa. 306, 19 A. 624; *Jackson's Est.*, 203 Pa. 33, 52 A. 125. 'Inadequacy of price, improvidence, surprise, and mere hardship, none of these, nor all combined, furnish an adequate reason for a judicial rescission of a contract. For such action something more is demanded,—such as fraud, mistake or illegality.' *Frey's Est.*, 223 Pa. 61, 65, 72 A. 317, 318. Although relief in equity is a matter of grace only and not of right, and rests in the discretion of the court, to be exercised upon a consideration of all the circumstances of

the case, it does not follow that a decree for specific performance must be entered in all cases where the agreement is legally sound and the price adequate, but if the transaction be inequitable or unjust in itself or rendered so by matters subsequently occurring, specific performance may be denied and the parties turned over to their remedy in damages (*Rennyson v. Rozell*, 106 Pa. 407, 412), and, while no rule applicable to all cases can be announced, it may be said that specific relief will be granted if apparent that, in view of all the circumstances, it will subserve the ends of justice, and will be withheld where, on a like view, it appears hardship or injustice will result to either of the parties. *Rennyson v. Rozell*, supra; *Spotts v. Eisenhauer*, 31 Pa.Super. 89, 93."

*Id.*, 459 Pa. at 531–532, 329 A.2d at 888–889, quoting *Welsh v. Ford*, 282 Pa. 96, 99, 127 A. 431, 432 (1925). See also: *Payne v. Clark*, 409 Pa. 557, 560, 187 A.2d 769, 771 (1963).

Sterling Land Company, incorporated in 1915, was owned by John McSorley and was engaged in owning and managing apartments and other real estate in Allegheny County. In 1931, McSorley transferred all the stock in his corporation to his six children: Arthur, G. Franklin, John, Jr., Robert, Virginia and Ethel (Mihm). Subsequent increases in capitalization and the declaration of stock dividends resulted, by 1946, in each child's ownership of 776 shares. In that year, the stockholders decided to restrict the right to sell stock by agreeing that each would sell only to other shareholders. An initial value of $250,000 was placed upon each stockholder's interest. Later, this value was increased to $300,000. Still later, in 1958, the shareholders agreed that if the value could not be agreed upon, the value of each interest would be determined by arbitration. Arthur died in 1964, and it was agreed that the corporation would purchase his shares for $450,000. His shares of stock were then retired. In 1966, G. Franklin died, and the value of his stock was fixed by arbitration at $440,000. His stock was also purchased by the corporation and retired.[1] A new

1. The arbitration and purchase were not completed until 1970.

agreement was executed in 1967. Pursuant thereto, Ethel agreed that upon her death, her stock was to be sold to the corporation for $475,000. The two remaining brothers and a sister were not equally bound; their heirs could elect to sell the shares owned by their decedent to the corporation or retain the shares and join the corporate enterprise. Ethel's interest was treated differently, it was explained, because it was not expected that her children would become active in the business of the corporation. In January, 1973, Virginia executed an agreement that upon death her stock should be sold to the corporation for $250,000. She died on December 12, 1973, and the corporation purchased her stock for $250,000. Although the three surviving shareholders, to wit, John, Robert and Ethel, continued to own only 776 shares of Sterling Land Company, each now owned a one-third interest in the corporate enterprise.

In 1976, Ethel executed another agreement. By the terms of this agreement, she bound her estate to sell her stock to the corporation for $475,000. She and the corporation were the sole parties to the agreement; the earlier agreement of 1967 remained in effect as to Robert and John, Jr. When Ethel died in 1978, her estate refused to sell her interest for $475,000. This precipitated the present litigation.

The trial court found that Ethel's involvement in the corporate enterprise had been limited to ministerial functions and that she had not been familiar with the scope of the corporate business or the financial aspects thereof. The corporation's business had been conducted by the two brothers, Robert and John. Robert was a lawyer, and he drafted the several buy-sell agreements. Ethel relied upon him to advise her regarding corporate matters and also with respect to the reasons for and effect of the buy-sell agreements which she executed in 1967 and 1976. The trial court found, based upon this evidence, that a confidential relationship had existed between Ethel and her brothers and that she relied upon and trusted them to protect her interests. There was a long-standing and close family relationship, the

court said, that caused Ethel "to deal with her brothers without the precaution normally used in transactions with a stranger." Thus, Ethel did not separately consult counsel. Her son testified that she had not been aware of the state of the corporation's business and had relied upon Robert for advice. Even Robert and John conceded that Ethel relied upon them for information regarding corporate business.

■■■ "The general test for determining the existence of [a confidential] relationship is whether it is clear that the parties did not deal on equal terms." *Frowen v. Blank,* 493 Pa. 137, 145, 425 A.2d 412, 416 (1981).[2] A confidential relationship was defined in *Brooks v. Conston,* 356 Pa. 69, 51 A.2d 684 (1947), as follows:

> Confidential relation is any relation existing between parties to a transaction wherein one of the parties is bound to act with the utmost good faith for the benefit of the other party and can take no advantage to himself from his acts relating to the interest of the other party: *Leedom v. Palmer,* 274 Pa. 22, 117 A. 410; *Harrison v. Welsh,* 295 Pa. 501, 145 A. 507; *Null's Estate,* 302 Pa. 64, 153 A. 137. This Court has recently defined confidential relationship in *Drob v. Jaffe,* 351 Pa. 297, 41 A.2d 407. Mr. Justice Horace Stern said, p. 300 [41 A.2d 407]: "... a confidential relationship is not limited to any particular association of parties but exists wherever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest...." That case was cited with approval in *Hamberg v. Barsky et al.,* 355 Pa. 462, 466, 50 A.2d 345, and in *Shook v. Bergstrasser,* 356 Pa. 167, 51 A.2d 681. See also: *McCown v. Fraser,* 327 Pa. 561, 192 A. 674; *Metzger v. Metzger,* 338 Pa. 564, 14 A.2d 285; *Stewart Will,* 354 Pa. 288, 47 A.2d 204; *Dichter Will,* 354 Pa. 444, 47 A.2d 691.

**2.** In this case, a confidential relationship was held to exist between an 86 year old widow and a neighboring couple with whom a close, social relationship had developed.

*Id.*, 356 Pa. at 76–77, 51 A.2d at 688. A confidential relationship "is not confined to any specific association of the parties; it is one wherein a party is bound to act for the benefit of another, and can take no advantage to himself. It appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed...." *Leedom v. Palmer*, 274 Pa. 22, 25, 117 A. 410, 411 (1922). In some cases, as between trustee and cestui que trust, guardian and ward, attorney and client, and principal and agent, the existence of a confidential relationship is a matter of law. In others, as between parent and child or brother and sister, the existence of a confidential relationship is an issue of fact to be established by the evidence. *Null's Estate*, 302 Pa. 64, 68, 153 A. 137, 139 (1930). Accord: *Peoples First National Bank and Trust Co. v. Ratajski*, 399 Pa. 419, 160 A.2d 451 (1960). Although the mere existence of kinship does not, of itself, give rise to a confidential relation, it is a factor to be considered. See: *Moyer v. Moyer*, 356 Pa. 184, 186–187, 51 A.2d 708, 709 (1947); *Null's Estate, supra*. See generally: *Peoples First National Bank and Trust Co. v. Ratajski, supra* (uncle and niece); *Hamberg v. Barksy*, 355 Pa. 462, 50 A.2d 345 (1947); *Drob v. Jaffe*, 351 Pa. 297, 41 A.2d 407 (1945).

In the instant case, the existence of a confidential relationship was an issue of fact. The orphans' court which heard the evidence found that a confidential relationship had existed. We accept that finding because, as we have observed, there is evidence to support it. That finding, approved by the court en banc, has the weight of a jury's verdict. *Peoples First National Bank and Trust Co. v. Ratajski, supra* 399 Pa. at 423, 160 A.2d at 453.

"Transactions between persons occupying a confidential relationship are prima facie voidable, and the party seeking to benefit from such a transaction has the burden of proving that the transfer was indeed fair, conscientious and beyond the reach of suspicion." *Frowen v. Blank,*

*supra,* 493 Pa. at 149, 425 A.2d at 418. The trial court found that the price inserted into the agreement of 1976 was grossly inadequate and unfair and that the decedent had not been made aware of the true value of her interest in the corporation. This is supported by the evidence. In 1970, the corporation had agreed to sell the corporate business for a price of $3,650,000. Although this agreement was never consummated, it suggests an awareness, even in 1970, that the agreement with Ethel contained an inadequate price. The value of the decedent's interest, moreover, had increased substantially by the corporate purchase and retirement of the interests of two brothers and a sister who had predeceased her. It is an inadequate answer, in the face of these circumstances, to suggest that the decedent's interest was undervalued in order to establish a low basis for determining the amount of estate taxes.

Appellants' reliance upon the decision in *In re Brown Estate,* 446 Pa. 401, 289 A.2d 77 (1972), is misplaced. There, the Supreme Court recognized the general rule that buy-sell agreements are specifically enforceable and cannot be avoided merely because of inadequacy of price. The facts of that case did not involve a confidential relationship.

The facts found by the orphans' court in the instant case are similar to the facts in *Brooks v. Conston, supra.* There, the Supreme Court held that a confidential relationship existed between a forty-one year old widow and her neighbor, Harry Conston, a close friend who acted as her business advisor and counsellor after her husband's death. The widow subsequently granted to Conston, upon his advice, an option to purchase a chain of millinery stores. Specific performance of the agreement was denied because the price was inadequate, and because Conston failed to prove that he had not acted in his own interest and had not taken advantage of the widow's confidence.

The decedent in the instant case had placed her trust in her brothers, Robert and John, and had relied upon them to act in her best interests in conducting the affairs of the family owned corporation. This gave rise to a confidential

relationship and required Robert and John to exercise the utmost good faith and take no advantage to themselves. The agreements which Robert induced the decedent to sign during her lifetime required that the decedent's interest in the business be sold for a price that was grossly inadequate and unfair. Robert and John did not similarly bind themselves and their estates; their agreement permitted them to perpetuate their interest in the corporation and pass it to their heirs. Under these circumstances it cannot be said that the orphans' court abused its discretion by refusing to decree specific performance.

Order affirmed.