664 A.2d 159

**Irene BIDDLE and Betty McConahy Executrices of the Estate of Eugene P. Kensinger, Late of Duncansville, Blair County, Pennsylvania, Deceased, Appellants,**

**v.**

**Shirley JOHNSONBAUGH and Donald E. Hileman.**

Superior Court of Pennsylvania.

Argued June 13, 1995.

Filed Aug. 29, 1995.

452

T. Dean Lower, Hollidaysburg, for appellants.

Steven P. Passarello, Hollidaysburg, for Shirley Johnson-baugh, appellee.

Before CIRILLO, FORD, ELLIOTT and HESTER, JJ.

CIRILLO, Judge:

Irene Biddle and Betty McConahy, executrices of the estate of Eugene P. Kensinger, deceased, appeal from the order entered in the Court of Common Pleas of Blair County, denying their motion to remove a compulsory nonsuit. We affirm.

In May of 1984, Donald Hileman and Shirley Johnsonbaugh, brother and sister respectively, entered into an oral agreement with their mother and stepfather, Mr. and Mrs. Eugene P. Kensinger. The agreement provided that Johnsonbaugh and Hileman would "provide for" and "take care of" Mr. and Mrs. Kensinger for the rest of their lives and not put Mrs. Kensinger in a nursing home. In return, Mr. and Mrs. Kensinger would deed their $70,000.00 house and lot to Johnsonbaugh and Hileman. At the time the agreement was entered into, Mr. and Mrs. Kensinger's health had been deteriorating. Mr. and Mrs. Kensinger subsequently performed in full by deeding their property over to Hileman and Johnsonbaugh on May 8, 1984, wherein they each received an undivided one-half interest.

At the time the agreement was entered into, Hileman was living in California and Johnsonbaugh resided in the Kensinger's immediate area. In September, 1984, with Hileman's and Johnsonbaugh's affirmative participation, Johnsonbaugh's son and daughter-in law entered into a separate agreement with Mr. and Mrs. Hileman, whereby they agreed to move into the house and take care of the Kensinger's in return for some personal items after they died. This agreement, however, is not at issue. Mrs. Kensinger subsequently passed away in October, 1984.

Eugene Kensinger died in 1987, and on April 4, 1990, Irene Biddle and Betty McConahy, his sisters and executrices of his estate, filed a complaint seeking damages for violation of a close and confidential relationship or breach of contract against Johnsonbaugh and Hileman. They also alleged that Johnsonbaugh and Hileman failed to perform on the oral agreement discussed above. Testimony was heard in the case on September 29 and 30, 1994. At the conclusion of Biddle and McConahy's case, opposing counsel for Johnsonbaugh orally moved for a compulsory nonsuit pursuant to Pennsylvania Rule of Civil Procedure 230.1. By an order dated September 30, 1994, the Honorable Hiram E. Carpenter granted the motion for compulsory nonsuit as to both Hileman and Johnsonbaugh.

Biddle and McConahy, pursuant to Pennsylvania Rule of Civil Procedure 227.1(c), filed a post-trial motion to remove the compulsory nonsuit, which was subsequently denied. They then filed a notice of appeal to this court. On appeal, McConahy and Biddle present two questions for this court to review:

(1) Did the Plaintiffs introduce sufficient evidence, on a Motion for Compulsory Nonsuit, to show that the Defendants took advantage of a close and confidential relationship with the Kensingers when they entered into an agreement to convey their $70,000.00 property?

(2) Did the Plaintiffs introduce sufficient evidence, on a Motion for Compulsory Nonsuit, to show that Defendants failed to perform and fulfill their obligation to the Kensingers under the agreement in a manner that was reasonably expected from the conveyance of a property worth $70,-000.00?

█ An appeal does not lie from the entry of a judgment of compulsory nonsuit, but rather from a refusal to take it off; this rule applies to actions in both law and equity. *Steiner v. Lurie*, 308 Pa.Super. 295, 296, 454 A.2d 138 (1982). Here, Biddle and McConahy properly filed their notice of appeal from the order denying their motion to remove the compulsory nonsuit.

■ The standard of review regarding the propriety of entry of compulsory nonsuit is that it is proper only if the factfinder, viewing all the evidence in favor of the plaintiff, could not reasonably conclude that the essential elements of a cause of action have been established. *Orner v. Mallick*, 432 Pa.Super. 580, 584, 639 A.2d 491, 492 (1994); *see also American States Ins. Co. v. Maryland Casualty Co.*, 427 Pa.Super. 170, 628 A.2d 880 (1993). Furthermore, a judge or jury cannot be permitted to reach a decision on the basis of speculation or conjecture. *Cruet v. Certain–Teed Co.*, 432 Pa.Super. 554, 557, 639 A.2d 478, 479 (1994).

■ Biddle and McConahy first contend that Hileman and Johnsonbaugh took advantage of a close and confidential relationship with Mr. and Mrs. Kensinger by allegedly inducing them to enter into the agreement to convey their $70,-000.00 property. The trial court did not determine the existence of this relationship, and Biddle and McConahy rely on Hileman's statement at trial that a close and confidential relationship did, in fact, exist. This statement alone, however, is not sufficient to meet their burden of proof.

■ A contract may be set aside or rescinded if it can be proven that, at the time of formation of the agreement, the parties did not bargain at arm's length. *Frowen v. Blank*, 493 Pa. 137, 145, 425 A.2d 412, 416 (1981); *see also Ruggieri v. West Forum Corp.*, 444 Pa. 175, 282 A.2d 304 (1971); *Young v. Kaye*, 443 Pa. 335, 279 A.2d 759 (1971); *Iron Worker's Savings & Loan Assoc. v. IWS, Inc.*, 424 Pa.Super. 255, 622 A.2d 367 (1993). One way to show that the parties' did not bargain at arms' length is to demonstrate that the parties were engaged in a confidential relationship at the execution of the agreement. *Frowen*, 493 Pa. at 145, 425 A.2d at 416; *see generally* 17 C.J.S. *Contracts* § 184 (1963).

■ A confidential relationship is any relationship existing between parties to a transaction wherein one of the parties is bound to act with the utmost good faith for the benefit of the other party and can take no advantage to himself from his acts relating to the interest of the other party. *In Re Estate of*

*Mihm,* 345 Pa.Super. 1, 7, 497 A.2d 612, 615 (1985). "[A] confidential relationship is not limited to any particular association of parties but exists wherever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest." *Brooks v. Conston,* 356 Pa. 69, 76, 51 A.2d 684, 688 (1945). On one side of a transaction, there is an overpowering influence and, on the other, a weakness, dependence or trust. *Frowen,* 493 Pa. at 145, 425 A.2d at 416.

■ A confidential relationship is deemed to exist as a matter of law between a trustee and *cestui que trust,* guardian and ward, attorney and client, and principal and agent. *Mihm,* 345 Pa.Super. at 8. 497 A.2d at 615. In other cases, however, as between parent and child or brother and sister, the existence of a confidential relationship is a question of fact to be established by the evidence. *Id.* (citing *Null's Estate,* 302 Pa. 64, 153 A. 137 (1930)). The mere existence of kinship, however, does not give rise to a confidential relationship, but is a factor to be considered. *Id.*

■ Once a confidential relationship is found to exist, the law presumes the transaction voidable. At that point, the party seeking to sustain the validity of the transaction must affirmatively demonstrate that the contract or transaction was "fair, conscientious and beyond the reach of suspicion." *Leedom v. Palmer,* 274 Pa. 22, 25, 117 A. 410, 411 (1922); *see also Frowen,* 493 Pa. at 148, 425 A.2d at 418; *Ruggieri,* 444 Pa. at 180, 282 A.2d at 307; *Iron Worker's,* 424 Pa.Super. at 270, 622 A.2d at 375. More precisely, the proponent of the contract must prove by clear and convincing evidence "that the contract was free, voluntary and an independent act of the other party, entered into with an understanding and knowledge of its nature, terms and consequences. . . ." *Kees v. Green,* 365 Pa. 368, 375, 75 A.2d 602, 605 (1950).[1]

---

1. Confidential relationship, as used throughout this opinion, is distinguishable from undue influence. While the two terms are sometimes used interchangeably, the latter is used mostly in will contests, and the former is employed most often in contract disputes. Furthermore, one can be in a confidential relationship without exerting undue influence,

This analysis was employed by the Pennsylvania Supreme Court in *Frowen v. Blank, supra,* at 137, 425 A.2d 412. There, Blanche Frowen executed an agreement to sell to J. Marshall Blank her seventy acre farm for the sum of $15,-000.00. At the time of the sale, Mr. Blank paid to Ms. Frowen $500.00. The agreement provided that Mr. Blank was to pay the balance of the purchase price, $14,500.00, no later than one year following the death of Ms. Frowen. Interest computed at the rate of five percent per annum was to be paid quarterly on the unpaid balance. *Frowen,* 493 Pa. at 141, 425 A.2d at 414.

Approximately five years after the execution of the agreement of sale, Ms. Frowen filed an action in equity, seeking the rescission of the contract. The trial court determined that no confidential relationship had been established. This court affirmed the trial court's decision, and the Supreme Court granted review to determine, *inter alia,* whether the record established a confidential relationship between Ms. Frowen and Mr. Blank. *Id.* at 141–43, 425 A.2d at 414–15.

After reviewing the record, the Court found that a confidential relationship existed between the parties. In so finding, the Court placed great emphasis on the following facts and circumstances. At the time of the transaction, Ms. Frowen was eighty-six years old, suffered from a loss of hearing and sight, had no more than two or three years of formal education and little knowledge of business matters, and had been living alone on her farm when Mr. Blank and his wife purchased the property adjoining Ms. Frowen's property. After the Blanks moved onto their adjoining property, the parties immediately developed a close social relationship. Regarding the sale of the farm, Ms. Frowen did not discuss the agreement of sale with anyone other than Mr. Blank and his attorney. At the time of the sale, the market value of the farm was approximately $35,000.00. *Id.* at 146–48, 425 A.2d at 417–18.

The facts in *Frowen* are clearly distinguishable from those presented in this case. Here, Biddle and McConahy

---

just as undue influence can be exerted by one not in a confidential relationship. *In Re Estate of Treitinger,* 440 Pa. 616, 622, 269 A.2d 497, 499 (1970); *Brooks,* 356 Pa. at 76–77, 51 A.2d at 688.

failed to offer sufficient evidence to support the finding of a close and confidential relationship. Although Mr. and Mrs. Kensingers' health had been deteriorating at the time the agreement was entered into, there is no evidence that they were not fully capable of understanding their actions and consequences. In addition, there is nothing in the record which supports a finding that the Kensingers were so weak and frail that Hileman and Johnsonbaugh took advantage of them and induced them to enter into the agreement.

As Judge Carpenter pointed out in his opinion, "just because the Kensingers' were old and ill, does not mean that they lose their right to engage in a transaction with their children." Because Biddle and McConahy failed to offer sufficient evidence to prove the existence of a close and confidential relationship, it was unnecessary for them to affirmatively demonstrate that the agreement was fair and beyond the reach of suspicion. *Frowen, supra,* at 137, 425 A.2d 412. We find, therefore, that the oral agreement between the Kensingers and Hileman and Johnsonbaugh cannot be rescinded based on a breach of a confidential relationship. *Frowen, supra; Brooks, supra,* at 356 Pa. 69, 51 A.2d 684.

 Biddle and McConahy additionally contend that Hileman and Johnsonbaugh failed to perform their obligations under the agreement in a manner that was reasonably expected. Under ordinary contract law, contracts are enforceable when parties reach mutual agreement, exchange consideration and have set forth terms of their bargain with sufficient clarity. *First Home Savings Bank v. Nernberg,* 436 Pa.Super. 377, 386, 648 A.2d 9, 14 (1994). Additionally, an agreement is definite if it indicates that parties intended to make a contract and if there is an appropriate basis upon which a court can fashion a remedy. *Id.* Moreover, when the language of the contract is clear and unequivocal, courts interpret the meaning by its content. *Id.*

 Applying these elements to the instant case, it is clear that an enforceable agreement existed between the parties. Judge Carpenter stated that an agreement did exist, but that

the issue was whether or not the agreement was breached by Hileman and Johnsonbaugh.

Biddle and McConahy contend that Hileman and Johnsonbaugh failed to provide for Mr. and Mrs. Kensinger in a way that was reasonably expected by them. They offer no evidence, however, which supports this contention. When Mr. and Mrs. Kensinger entered into the agreement, they wanted to be "provided for" and "taken care of" the rest of their days. Nothing in the record shows that this did not occur. To the contrary, Biddle and McConahy provided evidence that Mr. and Mrs. Kensinger received visitors and there was always someone there taking care of them. There was no evidence presented that Mr. and Mrs. Kensinger were being neglected or abused, or that they were not cared for or fed.

Biddle and McConahy placed extreme emphasis on the fact that Hileman and Johnsonbaugh were not the ones actually providing these services. However, we agree with the trial court that the agreement did not require the personal services of Hileman and Johnsonbaugh. The agreement merely stated that Mr. and Mrs. Kensinger would be "provided for" and "taken care" of and that Mrs. Kensinger would not be put into a nursing home. All of these provisions were satisfied. Nothing in the agreement, or actions of the parties reveal that in order for Mr. and Mrs. Kensinger to be provided for, Hileman and Johnsonbaugh had to be present every day. Mr. and Mrs. Kensinger knew at the time the agreement was executed that Hileman was returning to California where he lived, and that Johnsonbaugh would be working every day. It is also clear that Johnsonbaugh's son and daughter-in-law were to take care of Mr. and Mrs. Kensinger in Hileman and Johnsonbaugh's absence pursuant to the separate agreement.

We conclude, therefore, that Biddle and McConahy failed to establish the essential elements of their cause of action, and we agree with the trial court that their motion for removal of the compulsory nonsuit was properly denied. *Orner, supra,* at 432 Pa.Super. 580, 639 A.2d 491.

Order affirmed.