# Pennsylvania Property & Casualty Insurance Guaranty Association v. Angino & Rovner

C.P. of Dauphin County, no. 2133 S 2000.

*Scott T. Wyland,* for plaintiffs.
*Richard C. Angino* and *James DeCinti,* for defendants.

BEFORE: EVANS, LEWIS AND CLARK, *JJ.*

CLARK JR., *J.,* January 16, 2001—The resolution of this dispute hinges on whether a contract was created by the parties. By letter dated March 10, 2000, the Pennsylvania Property & Casualty Insurance Guaranty Association offered to settle the claims of four of the 49 claimants involved in an underlying case.[1] This letter specifically gave the claimants five days to accept the offer through their attorney, Richard C. Angino, Esquire.

Mr. Angino responded by letter dated March 14, 2000, and accepted PPCIGA's offer to settle the four claims

---

1. All letters referenced herein are attached to plaintiff's complaint, filed May 19, 2000, as exhibits A-F.

for the aggregate sum of $615,044.58, which was the settlement sum offered by PPCIGA.[2]

Mr. Angino also noted the acceptance did not include any attorneys' fees that were forthcoming. Regarding this issue, Mr. Angino proposed that PPCIGA pay an additional $625,000 to settle the attorneys' fees relating to the four claims. Furthermore, Mr. Angino also stated that the acceptance of the payment for the four claimants was unaffected by PPCIGA's decision relating to the attorneys' fees.

PPCIGA then faxed a letter to Mr. Angino on March 27, 2000 which stated that the money for the four settled claims would not be distributed until the four claimants signed releases. Mr. Angino responded on March 28, 2000, and agreed not to release any of the money to the estates of the four claimants until a release was signed by a representative of each estate and forwarded to PPCIGA. The payment was to be sent to Mr. Angino by March 31, 2000, and deposited into his escrow account.

PPCIGA, on March 29, 2000, sent four drafted release documents and four settlement checks in the aggregate amount of $621,470.23 to Mr. Angino via Federal Express. Also in the letter, PPCIGA stated that it was entitled to contest the claims for attorneys' fees, and also agreed with Mr. Angino's assertion that the settlement of the four individual claims did not preclude a claim by Mr. Angino for attorneys' fees.

After the money had been forwarded to Mr. Angino, PPCIGA sent another letter to Mr. Angino via Federal

2. This sum was subsequently adjusted to $621,470.23 to reflect interest that accrued between the time the settlement offer was made, and when the check was delivered.

Express on April 19, 2000. PPCIGA directed Mr. Angino to refrain from distributing any money to the four estates, and asserted that there was not an agreement to the four claims because the interest had been miscalculated. Specifically, PPCIGA argued the interest was calculated based on compound, rather than simple interest. Furthermore, PPCIGA claimed that an agreement had not been reached concerning the language of the releases, due to proposed changes made by Mr. Angino to the second draft of the releases.

It seems clear from the facts that a contract was formed by the parties. As stated in *Biddle v. Johnsonbaugh,* 444 Pa. Super. 450, 458, 664 A.2d 159, 163 (1995), "[u]nder ordinary contract law, contracts are enforceable when parties reach mutual agreement, exchange consideration and have set forth terms of their bargain with sufficient clarity.... Additionally, an agreement is definite if it indicates that parties intended to make a contract and if there is an appropriate basis upon which a court can fashion a remedy.... Moreover, when the language of the contract is clear and unequivocal, courts interpret the meaning by its content." (Citing *First Home Savings Bank v. Nernberg,* 436 Pa. Super. 377, 386, 648 A.2d 9, 14 (1994).)

It is obvious from the exchange of letters that the parties intended to form a contract. PPCIGA offered to settle the four claims on March 10, 2000, and Mr. Angino accepted that offer on behalf of his clients on March 14, 2000. Thereafter, the correspondences dealt with attorneys' fees and releases. In fact, as mentioned earlier, PPCIGA stated in the March 29, 2000 letter "that the settlement of the four designated claims are for the

principal and interest of those claims only. We also agree that the settlement *does not* waive your right to assert a claim for (a) attorney fees and costs; (b) amounts reasonably recoverable under the Pennsylvania No Fault Act for the remaining 45 plaintiffs; and (c) any other claims that may be asserted at law." (See exhibit E, attached to plaintiff's complaint.) (emphasis in original) This language only reinforces the notion that a contract was created pertaining to the settlement, and the attorneys' fees and releases were ancillary matters to be dealt with at a later time.

Speaking in terms of the holding set forth in *Biddle, supra,* the parties reached a mutual agreement concerning the settlement, consideration was exchanged (money in exchange for the settlement agreements), and the terms of the agreement were clear.

To further support the contention that a contract was formed, it should be noted that PPCIGA, in fact, forwarded the money to Mr. Angino. PPCIGA certainly would not have parted with such a large sum of money if it was unsettled as to the terms of the agreement.

In the complaint and brief in opposition to defendants' preliminary objections filed by PPCIGA, the main argument made by PPCIGA is that Mr. Angino knew, or should have known, that a mistake was made in arriving at the settlement figure. This argument must fail for the following reasons.

First, PPCIGA noted that 40 P.S. §1009.106(a)(2) (repealed), did not specify whether compound or simple interest should be used. (See brief of Pennsylvania Property & Casualty Guaranty Association in opposition to defendants' preliminary objections, filed July 19, 2000,

p. 4.) PPCIGA cites to *Murray v. Prudential Insurance Company of America,* 144 Pa. Super. 178, 184, 18 A.2d 820, 823 (1941), which states that, "the law does not favor compound interest or interest on interest; and the general rule is that in the absence of a contract therefore, express or implied, or of statute authorizing it, compound interest is not allowed to be computed on debt . . . ." While there was no agreement within the contract stating that the interest would be compounded, there was, nonetheless, a contract formed between the parties. In short, even though Pennsylvania law frowns upon the use of compound interest in the absence of a contract, this court finds that a contract was formed in this case. Therefore, the method of computing the interest becomes irrelevant. The holding in *Murray, supra,* must defer to the amount agreed upon by the parties through the creation of the contract.

Second, PPCIGA indicated that Mr. Angino should have deduced that a mistake was made based on his status as an attorney, and his extensive experience in such cases. (See brief of Pennsylvania Property & Casualty Guaranty Association in opposition to defendants' preliminary objections, filed July 19, 2000 p. 4.) As noted by Mr. Angino in the reply brief, however, PPCIGA would certainly have a sophisticated legal staff at its disposal, and they were responsible for calculating the sum of money. (See defendants' reply to plaintiff's brief in opposition to defendants' preliminary objections, filed July 28, 2000, p. 3.) Furthermore, without being told that the total was reached using compound interest rates, Mr. Angino had no way of knowing a mistake was made. For all Mr. Angino knew—assuming he thought the figure was higher than necessary—the additional

money was offered as an inducement to settle the claims, not because the interest had been compounded inadvertently.

PPCIGA claimed it is entitled to relief based on theories grounded in conversion, unjust enrichment, and replevin. (See plaintiff's complaint, filed May 19, 2000.) Each one of these should be analyzed briefly.

PPCIGA cited *Francis J. Bernhardt III, P.C. v. Needleman,* 705 A.2d 875, 878 (Pa. Super. 1997), which defined conversion as "the deprivation of another's right of property in, or use or possesion of, a chattel, without the owner's consent and without lawful justification." Here, there is no doubt PPCIGA consented to Mr. Angino's possession of the money, because they forwarded the money to him. Furthermore, since this court found that a contract existed between the parties, Mr. Angino's possession of the money cannot be found unlawful.

The plaintiff relied on *Mitchell v. Moore,* 729 A.2d 1200, 1203-1204 (Pa. Super. 1999), which listed the elements of unjust enrichment as follows: "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. (citations omitted) The application of the doctrine depends on the particular factual circumstances of the case at issue. *In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.*" (citations omitted) (emphasis in original)

That case also points out that a claim for unjust enrichment must show that the benefit was either secured wrongfully or received passively. *Id.*

It does not appear that the defendants have been unjustly enriched. As alluded to previously, this was a settlement agreement. PPCIGA may have intentionally inflated the figures with the hope that a settlement could be reached. It was perfectly logical for Mr. Angino to think that PPCIGA wanted to avoid the possibility of a higher figure at trial. Also, as noted by the defendants, the principles of unjust enrichment are "not applicable to agreements deliberately entered into by the parties however harsh the provisions of such contracts may seem in the light of subsequent happenings." *Third National Bank & Trust Co. of Scranton v. Lehigh Valley Coal Co.,* 353 Pa. 185, 193, 44 A.2d 571, 574 (1945).

There can be no doubt that the defendants were not in wrongful possession of the money. Again, PPCIGA forwarded it to them based on the contract formed by the letters. Neither can it be concluded that Mr. Angino passively received the benefit. This would necessarily infer that Mr. Angino knew of the mistake, but chose to say nothing about it. The facts simply do not support this position.

Accordingly to *Valley Gypsum Co. v. Pennsylvania State Police,* 135 Pa. Commw. 548, 553, 581 A.2d 707, 710 (1990), a claim for replevin "is founded upon the wrongful taking and detention of property and seeks to recover property in the possession of another." Much like the claim for conversion, the claim for replevin cannot be sustained because there was no wrongful taking. The money was transferred, lawfully, pursuant to a contract.

As this court has determined that a contract was formed through the exchange of letters by the parties, the only conclusion that can be reached is that PPCIGA made a unilateral mistake in its miscalculation of the interest. Succinctly stated, if "the mistake is not mutual but unilateral and is due to the negligence of the party seeking to rescind, relief will not be granted." *Cobaugh v. Klick-Lewis Inc.*, 385 Pa. Super. 587, 593, 561 A.2d 1248, 1251 (1989). (citations omitted)

The facts of the instant case indicate that PPCIGA made a careless mistake. It was PPCIGA that miscalculated the interest and forwarded the money to Mr. Angino pursuant to the agreement reached by the parties. This settlement agreement was bargained for by each of the parties, and entered into willingly. As a result, this court fails to see any justification for the return of the alleged overpayment due to PPCIGA's lack of care.

Wherefore, January 16, 2001, the preliminary objections of the defendant's complaint are hereby granted.