J-A02036-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: CECILIA F. BALOGH, AN ADULT | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: ROBERT F. BALOGH | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 717 WDA 2020 |

Appeal from the Order Entered June 18, 2020
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  02-19-05069

BEFORE:  BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

CONCURRING AND DISSENTING MEMORANDUM BY BOWES, J.:

**FILED:  July 29, 2021**

I agree with the learned Majority that although the orphans' court erroneously applied the more stringent undue influence standard for testamentary transfers, the record supports its findings of a confidential relationship between Mother and Son and considerable financial benefit to Son at the time the bonds were redeemed and the joint bank account established.[1]

---

[1] In a testamentary proceeding, Pennsylvania courts have recognized a presumption of undue influence based on evidence that "(1) there was a confidential relationship between the proponent and testator (2) the proponent received a substantial benefit under the will, and (3) the testator had a weakened intellect." **Estate of Fritts**, 906 A.2d 601, 606-07 (Pa.Super. 2006).  In actions to void gifts involving claims of undue influence between living parties, no proof of a weakened intellect is required.

Hence, I concur with the Majority's affirmance with respect to Mother's undue influence claim involving those two transfers.

I depart from my colleagues, however, in affirming that portion of the orphans' court's order voiding the loan agreement and ordering Son to remit $136,400 to Mother. In my view, Mother did not plead facts sufficient to apprise Son that she was challenging the enforceability of the loan agreement and, consequently, Son did not object to venue or plead and prove applicable defenses. Nor did Mother introduce proof of undue influence at the time of the formation of the loan agreement, a deficiency that the orphans' court glossed over. Hence, I dissent.

A detailed summary of the procedural history of this case is helpful to an understanding of my objection to the orphans' court's treatment of the loan agreement. Mother filed a petition in orphans' court on March 5, 2019, seeking a citation for a rule to show cause why Son, as agent under a power of attorney ("POA"), should not file an accounting. She pled that she executed a durable POA on June 10, 2018, naming Son as her agent. She alleged that, within days of her husband's death in August 2018, Son directed her to endorse 350 U.S. savings bonds, and the proceeds were deposited in Son's account. Mother alleged further that Son located and removed $136,400 in cash from her home. In her petition, she asked that Son be required to return her assets and provide an accounting of his actions as her fiduciary from June 10, 2018 through March 5, 2019.

Son filed an answer to the petition in which he averred that none of the alleged actions was taken pursuant to the POA. He maintained further that Mother moved into his home on or about June 15, 2018, around the time her husband was discharged from Western Psychiatric Hospital to a senior living facility. He pled that the savings bonds were a gift from Mother to Son and his wife. In response to Mother's claim that he converted $136,400 in cash that he found in her home, Son averred that Mother retrieved the cash from her home and subsequently loaned that sum to Son. As proof of the loan, Son attached a copy of the June 9, 2018 loan agreement and promissory note to his answer to the petition. The agreement stated that the borrowed funds were to be used to provide Son, the Borrower, with funds to obtain real property and construct a home capable of housing Mother and her husband, Son and his wife, and Mother would retain a life interest in the home with the remainder interest in Son.[2] The repayment schedule was to be determined later because the parties acknowledged that Son would be required to expend effort and personal funds to complete the construction of the home. At Mother's death, the loan would be forgiven. The agreement also contained a provision stating that venue of any dispute involving the agreement and

_____

[2] As of the date of the hearing, Son had used $51,412.48 of the loan funds to purchase a vacant lot for the house. Construction had commenced but was not completed.

promissory note exclusively lay in the Washington County Court of Common Pleas.

Mother filed a "reply to new matter" in which she denied that she gifted the bonds to Son and his wife and denied Son's characterization of the attached instrument as a loan agreement.

An informal accounting was filed by Son on December 6, 2019, pursuant to an October 23, 2019 consent order entered by the parties, but it is not present in the certified record. A hearing took place on March 3, 2020, at which there was no mention of an accounting. Rather, the hearing focused largely on whether Son exerted undue influence over Mother during the bond transaction and in setting up the joint bank account, and in whether affected sums of money should be remitted to Mother. There was little testimony surrounding the circumstances of the loan for the home Mother was supposed to share with Son and his wife.

Initially, I would note that there is no evidence in the certified record that Son's complained-of actions were taken pursuant to the POA.[3] Mother

---

[3] But for the fact that Mother initiated this proceeding as a petition for an accounting from her POA, I submit that orphans' court jurisdiction would not have been implicated at all. *See* 20 Pa.C.S. § 711(22) (conferring jurisdiction upon the orphans' court division of the court of common pleas over "[a]ll matters pertaining to the exercise of powers by agents acting under powers of attorney"); *see Estate of Ciuccarelli*, 81 A.3d 953, 958 (Pa.Super. 2013) ("Jurisdiction lies if the court had power to enter upon the inquiry, not whether it might ultimately decide that it could not give relief in the particular case.").

endorsed the bonds and directed the bank to deposit the proceeds into Son's account in August 2018. The joint account was opened by Mother and Son. The account consisted entirely of Mother's contributions,[4] although Son made withdrawals for his own use and benefit. The loan agreement was executed by Mother and Son in early June 2018, prior to the execution of the POA. Mother did not dispute that she signed the loan agreement, although, at the March 3, 2020 hearing, she could not remember doing so. Thus, the record reveals that, contrary to the averments in the petition, this was not a situation where an agent abused his power under a POA and was subject to surcharge.

Second, Mother did not plead that the loan agreement was the product of Son's undue influence or breach of a confidential relationship, nor did she ask the court to void that agreement. Mother alleged only that Son converted the sum of $136,400 that was found in her home and asked the court to order its return. Son denied that allegation and presented the loan contract as a defense to the conversion allegation. Thus, the pleadings provided no notice to Son that the integrity of the loan agreement was at issue and that he would have to defend its validity and enforceability against a claim of undue influence. I submit that, based on the pleadings, Son would have had no

---

[4] The joint bank account at issue would appear to be governed by the Multiple Party Accounts Act ("MPAA"), 20 Pa.C.S. §§ 6301-6306. Section § 6303(a) provides that "[a] joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sum on deposit, unless there is clear and convincing evidence of a different intent."

reason to file a preliminary objection challenging venue. It follows then that, unlike the Majority, I would not find Son's objection to venue waived as he raised the issue when he first reasonably became aware that the validity of the contract was at issue: when the orphans' court voided the loan agreement.

Moreover, even if Mother had properly pled undue influence as a basis to void the loan agreement, she did not prove it. "A contract may be set aside or rescinded if it can be proven that, **at the time of formation of the agreement**, the parties did not bargain at arm's length." ***Frowen v. Blank***, 425 A.2d 412, 416 (Pa. 1981) (emphasis added); ***see also Biddle v. Johnsonbaugh***, 664 A.2d 159, 161 (Pa.Super. 1995). One means of proving that it was not an arm's length transaction is by showing that the parties were in a confidential relationship at the time of the execution of the agreement. ***Id***. A confidential relationship is deemed to exist as a matter of law in relationships such as attorney and client, principal and agent, trustee and beneficiary, and guardian and ward. However, in cases involving kinship, such as the relationship between a parent and child, the existence of a confidential relationship is a question of fact to be established by the evidence, and the party seeking to void the transaction bears the burden of establishing the confidential relationship. ***Id***. at 162. Once a confidential relationship is found to exist, the transaction is merely voidable. At that point, the party seeking to sustain the validity of the transaction must affirmatively demonstrate by clear and convincing evidence that the contract was "free,

voluntary and an independent act of the other party, entered into with an understanding and knowledge of its nature, terms and consequences." **Id**. (quoting **Kees v. Green**, 75 A.2d 602, 605 (Pa. 1950)).

I find support in the record for the orphans' court's determination that Mother and Son had a confidential relationship on June 30, 2018, when the joint bank account was established with Mother's money, and August 17, 2018, when the U.S. savings bonds were redeemed and gifted to Son. The orphans' court based its finding on evidence that Mother lived with Son and Son was Mother's agent under a POA. In contrast, the loan agreement was executed on June 9, 2018, before Mother came to live with Son and prior to the execution of the POA. It was at a time when Mother had made it known that she wanted to live with one of her children, and Son agreed to take her in after her daughters refused. The purpose of the loan was to enable Son to procure a one-story home suitable for his parents to live in with Son and his wife, which I submit was as much, if not more, for Mother's benefit as Son's. Despite what the orphans' court perceived as contract terms unreasonably favoring Son, Mother did not offer any evidence that she and Son did not bargain at arm's length over the loan. Mother, who had sustained an intervening head injury, could not remember entering into the loan agreement although it was undisputed that it bore her signature.

For these reasons, I find that the record does not support the orphans' court's finding of a confidential relationship at the time of the loan agreement

- 7 -

that would have shifted the burden to Son to prove that Mother entered the contract voluntarily and understood the consequences. Hence, I would vacate and reverse that part of the orphans' court order voiding the loan agreement and requiring Son to remit the sum of $136,400 within sixty days, and providing that Son and his wife retain the real property.[5] In all other respects I would affirm.

_____

[5] At the time of the hearing, Mother was no longer residing with Son and his wife, but nevertheless, she would retain a life estate in the house.