J-A16037-17
J-A16038-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| PNC BANK, NATIONAL ASSOCIATION, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| GUIDO D'ELIA, | : | |
| | : | |
| Appellant | : | No. 1475 WDA 2016 |

Appeal from the Order Entered September 27, 2016
in the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 15-020177

| | | |
|---|---|---|
| PNC BANK, NATIONAL ASSOCIATION, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOSEPH WITTKOFSKI, | : | |
| | : | |
| Appellant | : | No. 1477 WDA 2016 |

Appeal from the Order Entered September 27, 2016
in the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 15-020182

BEFORE:    STABILE, J., FORD ELLIOTT, P.J.E., and STRASSBURGER,* J.

MEMORANDUM BY STRASSBURGER, J.:        **FILED SEPTEMBER 12, 2017**

In these identical appeals, Guido D'Elia and Joseph Wittkofski (collectively Appellants) appeal from the September 27, 2016 order denying their petitions to open judgments by confession and for stay of execution. We affirm.

*Retired Senior Judge assigned to the Superior Court.

Appellants are former officers, directors, and shareholders of D'Elia Wittkofski, Inc. d/b/a Mind Over Media. Mind Over Media was a corporate borrower of PNC Bank, National Association (PNC). In November 2005 Appellants executed commercial guaranties in favor of PNC, agreeing to pay all obligations owed by Mind Over Media should the company default on its loan payments. Pertinent to this appeal, both commercial guaranties contained the following language: "Guarantor also waives any and all rights or defenses arising by reason of: … (D) any right to claim discharge of the [i]ndebtedness on the basis of unjustified impairment of any collateral for the [i]ndebtedness;…" Wittkofski's Commercial Guaranty Agreement, 11/18/2005, at 2; D'Elia's Commercial Guaranty Agreement, 11/18/2005, at 2.

On November 12, 2015, Mind Over Media filed a Chapter 11 Bankruptcy petition. Several days later, PNC confessed judgment against Appellants after they and Mind Over Media defaulted on the loan payments due.

Individually, Appellants "then filed a [p]etition to [o]pen the pertinent confessed judgment, raising the defenses of impairment of collateral, excessive counsel fees, and excessive interest rate.[1] After argument, the

---

[1] "On appeal, [Appellants] assert only the issue of impairment of collateral. Counsel fees and interest rate are not issues on appeal." Trial Court Opinion, 1/5/2017, at 2.

[trial court] concluded that no meritorious defense had been alleged and denied the [p]etitions to [o]pen." Trial Court Opinion, 1/5/2017, at 1-2.

Appellants timely filed notices of appeal, and Appellants and the trial court complied with Pa.R.A.P. 1925. Appellants present three questions to this Court, which we have reordered for ease of disposition.

1. Did the [trial] court err in holding that Appellant[s] waived the impairment of collateral defense?

2. Did PNC impair the collateral in violation of its duties under the Uniform Commercial Code?

3. Did PNC's impairment of the collateral also constitute a breach of its duties of good faith and fair dealing?

Wittkofski's Brief (1477 WDA 2016) at 4 (trial court answers omitted). **See also** D'Elia's Brief (1475 WDA 2016) at 4 (same). We begin with our standard of review.

When the denial of a petition to open a confessed judgment is appealed, we will not disturb the lower court's denial unless it is shown that the court committed an error of law or a manifest abuse of discretion. Traditionally, a confessed judgment will be opened in only a limited number of circumstances, and only when the person seeking to open acts promptly, alleges a meritorious defense and presents sufficient evidence of that defense to require submission of the issues to the jury. In making such a determination, the court employs the same standard as that of the directed verdict—viewing all the evidence in the light most favorable to the petitioner and accepting as true all evidence and proper inferences therefrom supporting the defense while rejecting adverse allegations of the party obtaining the judgment.

*Iron Worker's Sav. & Loan Ass'n v. IWS, Inc.*, 622 A.2d 367, 370 (Pa. Super. 1993) (citations and quotation marks omitted).

In its 1925(b) opinion, the trial court offered the following explanation for its decision to deny Appellants' petitions.

> **1. Guarantors waived the defense of impairment of collateral.**
>
> Pennsylvania law very clearly permits a lender to include a waiver of the defense of impairment of collateral in a loan document. *See* 13 Pa.C.S. § 3605(i); [Appellants] rely on §3605(e) for their assertion of the defense.
>
> 13 Pa.C.S. § 3605(e) states:
>
>> Impairment of collateral; discharge of indorser or accommodation party.—If the obligation of a party to pay an instrument is secured by an interest in collateral and a person entitled to enforce the instrument impairs the value of the interest in collateral, the obligation of an indorser or accommodation party having a right of recourse against the obligor is discharged to the extent of the impairment. The value of an interest in collateral is impaired to the extent the value of the interest is reduced to an amount less than the amount of the right of recourse of the party asserting discharge or the reduction in value of the interest causes an increase in the amount by which the amount of the right of recourse exceeds the value of the interest. The burden of proving impairment is on the party asserting discharge.
>
> 13 Pa.C.S. § 3605(i) states:
>
>> Other limitations on discharge.--A party is not discharged under this section if:

> (1) the party asserting discharge consents to the event or conduct that is the basis of the discharge; or
>
> (2) the instrument or a separate agreement of the party provides for waiver of discharge under this section either specifically or by general language indicating that parties waive defenses based on suretyship or impairment of collateral.

[The trial court] correctly concluded that the defense was indeed waivable and that [Appellants] had waived it.

**2. Even if there had been no waiver, [Appellants] own [p]etitions and evidence show that [Appellants] had the power to prevent the conduct of the person they put in charge of the company and did nothing to remove him.**

[Appellants] contend that PNC failed to heed their warnings or requests regarding the wrongful conduct of Mr. Foster regarding the management of the business and the handling of its finances. However, even if true, this is not sufficient for a jury to conclude that it was PNC who impaired the collateral. Rather, [Appellants] have shown at most that Mr. Foster impaired the collateral and that [Appellants] failed to exercise their power to control him or dismiss him.

**3. Since the defense of impairment of collateral was waived, any such impairment cannot constitute the breach of a duty of good faith and fair dealing.**

[Appellants] may have intended to assert that there was also a breach of the duty of good faith and fair dealing, not that the alleged impairment itself constituted such a breach. Either way, since Pennsylvania law permits the defense to be waived PNC committed no breach by asserting that waiver.

Trial Court Opinion, 1/5/2017, at 2-4.

Appellants disagree with the trial court's conclusions. They first maintain that PNC impaired the collateral by failing to heed their notices and

warnings that Mind Over Media, under the leadership of then president and manager of sales, Cecil Foster (Mr. Foster), was dissipating its assets. Wittkofski's Brief at 11; D'Elia's Brief at 11. This is significant because, despite the trial court's finding to the contrary, Appellants contend that they did not waive the impairment of collateral defense. Specifically, D'Elia testified at his deposition that "he did not even know what the term 'impairment of collateral' meant, and that no one from PNC pointed out the waiver language or explained its meaning when he signed the guaranty." *Id.* at 15. Wittkofski relies on this testimony as evidence that, he too, did not waive this defense. *Id.* Furthermore, Appellants aver that the issue of waiver is "generally a question of fact," and thus this issue should have been submitted to a jury. *Id*. Lastly, Appellants argue that "PNC's intentional failure to collect its debt from Mind Over Media, when it knew that the company had sufficient assets to satisfy the obligation, clearly constituted a breach of its duty of good faith and fair dealing, and thus mandated the opening of the judgment." *Id.* at 17

We discern no error in the trial court's decision. As cited by the court, 13 Pa.C.S. § 3605(i) specifically allows for the waiver of certain defenses, including impairment of collateral. The guaranties signed by Appellants clearly contain waiver provisions, disallowing the parties from raising such a defense. D'Elia's contention that he did not understand what the term

impairment of collateral meant and that no one from PNC pointed out the waiver language to him, is unavailing. Absent more,[2] Appellants are unable to overcome the unambiguous waiver language within the contracts they signed. As this Court held in a case involving a similar argument,

> [a]lthough [the defendant] was ostensibly attacking the validity of the waiver, [she] did not present any basis for finding the waiver provisions invalid or unenforceable. Her failure to read her agreement does not render it either invalid or unenforceable. The law of Pennsylvania is clear. One who is about to sign a contract has a duty to read that contract first. As this Court has stated:
>
>> It is well established that, in the absence of fraud, the failure to read a contract before signing it is "an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract"; it is considered "supine negligence." ***Germantown Sav. Bank v. Talacki,*** [657 A.2d 1285, 1289 (Pa. Super. 1995)].

***Hinkal v. Pardoe***, 133 A.3d 738, 743 (Pa. Super. 2016) (some citations and quotation marks omitted).

---

[2] Appellants cite ***Union National Bank & Trust Co. v. Lumish,*** 1 Phila. 177 (1978), averring that the court in ***Union*** "held that a similar clause constituted a 'contract of adhesion,' and thus did not serve as a waiver of an impairment of collateral defense." D'Elia's Brief at 15; Wittkofski's Brief at 15. However, unlike in this case, the guarantor in ***Union*** alleged that the one page form agreement he signed was fraudulent. Concluding the guarantor had relied on false representations, the trial court found the contract was one of adhesion. The court did not, however, find that all contracts containing a provision waiving the impairment of collateral defense were invalid; instead it determined under the particular facts of the ***Union*** case, there was no meeting of the minds, and thus the contract was unenforceable. Regardless, even if ***Union*** were directly on point, this 1978 trial court case is not binding precedent.

Accordingly, the trial court did not err in entering the September 27, 2016 order denying Appellants' petitions. Rather, it correctly determined that Appellants' impairment of collateral defense was waived, and as such, it could not have been raised as a meritorious defense that would warrant the opening of the confessed judgment.[3]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2017

---

[3] In reaching this conclusion we need not address Appellants' remaining arguments that (1) PNC impaired the collateral; and (2) PNC's impairment of the collateral constituted a breach in their duties of good faith and fair dealing.